## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BOBBIE JO HOROCOFSKY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No. 20-CV-02529-JWB-KGG** |
| | ) |
| **CITY OF LAWRENCE, KANSAS, et.al.** | ) |
| | ) |
| **Defendants** | ) |

### PLAINTIFF'S AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANT UNIVERSITY OF KANSAS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Bobbie Jo Horocofky was in her third year of law school when a KU law student raped her after they attended a KU law school event. She decided to pursue a Title IX complaint pursuant to KU policies and gave a statement to the KU Title IX investigator. But, unknown to her, Lawrence Police detectives had already been in contact with KU's Title IX office. KU is supposed to give students notice of Title IX investigations but KU never informed Bobbie that it was acting in concert with the police to investigate *her* for making a false report. When she withdrew her authorization for the University to share her information with police, KU ignored it. Not until July 2019 did KU tell her it had been investigating *her* all along, accusing her of falsely reporting her rape, just as the police had. While Bobbie was eventually exonerated from all criminal charges, the damage was done.

In addition to deliberately concealing the focus of its investigation, KU was deliberately indifferent to the ongoing harassment and hostile education environment. KU is not supposed to retaliate against a student for filing a Title IX report. Yet, Bobbie sat in the classroom of KU professor Quinton Lucas – the future Kansas City mayor and a friend of her assailant – and listened while he used her as an example of why Title IX processes regarding sexual assault should be abolished. She could not complete class after that. KU is supposed to take action when it receives reports of discrimination and retaliation. Yet, after Bobbie reported Lucas' conduct, the University did nothing at all to investigate the incident. Doing nothing at all is the hallmark of "deliberate indifference."

The University of Kansas is subject to the broad proscription against sex discrimination mandated by Title IX:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a); *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982) (Title IX must receive "a sweep as broad as its language"). There is no dispute that Defendant KU is an institution with education programs and activities or that it is a recipient of federal financial assistance. (Doc. 25, ¶ 37, 252). And there should be no dispute that KU was deliberately indifferent to Bobbie Horocofsky's Title IX rights. Defendant's motion to dismiss must be denied.

## I.     Nature of the Matter Before the Court

KU seeks to have all claims asserted against it dismissed for failure to state a claim, relying on exaggerations and hyperbole rather than the pleaded facts. Pertinent to this case, courts have recognized four different Title IX theories of liability, two of which address liability for "pre-assault" conduct and the other two of which address liability for "post assault" conduct. In the First Amended Complaint ("FAC"), Plaintiff has adequately pled these theories. The FAC contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

First, Bobbie Jo Horocofsky has stated a claim against KU under a "pre-assault" *Simpson*[1] theory in Count IV. See Section IV., B., infra. Plaintiff sues KU for its deliberate indifference to her rape that resulted from the official policy of sponsoring, sanctioning, and supporting law school events that serve alcohol to attendees and that without proper control, training or guidance, KU knew would lead to sexual assault or harassment. Plaintiff also sues KU for its deliberate indifference to harassment and discrimination of female students like Plaintiff stemming from its official policy to not independently investigate sexual assaults involving a police investigation. Such a hands-off

---

[1]     *Simpson v. Univ. of Colo. Boulder,* 500 F.3d 1170 (10th Cir. 2007).

approach emboldens student rapists and endangers female students who report sexual assault.

Second, Plaintiff states a claim against KU under a "post-assault" *Farmer*[2] theory in Count V. See Section IV., C., 1.   KU's deliberate indifference to Plaintiff's report of rape caused Plaintiff to undergo intimidation and harassment on campus or made her vulnerable to it, which caused her to be deprived of educational opportunities and benefits at KU. When a school fails to adequately respond to a report of rape, regardless of where it occurred, the assailant's on-campus presence and the risk of encounters with the victim can constitute a hostile environment, triggering a school's Title IX duty to respond. Such an on-campus hostile environment is under a school's substantial control.

Third, Plaintiff states a claim against KU under a "post-assault" *Jackson*[3] retaliation theory in Count VI. See Section IV., D.   After Bobbie reported the rape to KU and engaged in other protected activity, she was subjected to a hostile educational environment when KU failed to protect her and instead, condoned and encouraged the conduct.

Fourth, Plaintiff pled facts in support of the "pre-assault" Title IX discrimination theory in Count V, only some of which are upon information and belief. See Section IV, C.,2.   KU's deliberate indifference to prior reports of sexual misconduct caused Plaintiff to be sexually harassed.

KU asks this Court to constrict the scope of Plaintiff's claims contrary to precedent that emphasizes the broad remedial purpose of Title IX.   KU's motion should be denied because Bobbie pleads adequate facts to make each Title IX cause of action plausible. Fed. R. Civ. P. 8(a)(2).

## II.    Plaintiff's Statement of Facts

In September 2018, Bobbie Jo Horocofsky was a third-year law student at Defendant KU's law school. Throughout her first two years of law school, Bobbie was involved in law school activities and events, and served as a KU Law School Ambassador. (Doc. 25, ¶¶ 7, 32). One of those activities

---

[2]      *Farmer v. Kansas State University,* 918 F. 3d 1094 (10th Cir. 2019).
[3]      *Jackson v. Birmingham Bd. of Ed.*, 544 US 167 (2005).

was a Diversity & Inclusion event at Johnny's Tavern on September 27, 2018, sanctioned by KU's law school. (Doc. 25, ¶¶ 8, 168). KU's custom and practice at law school events was to provide alcohol; students were encouraged to participate and drink. (Doc. 25, ¶ 168).[4]

Bobbie attended the event with other law students. Hours later, she woke up groggy and confused in a strange bed and had no idea where she was. She was naked and had bruises on her body. (Doc. 25, ¶¶ 8, 38). As fragments of her memory returned, she realized that she'd become intoxicated and that a fellow law student, Joel Thompson, had sexually assaulted her while she was blacked-out and unable to consent. (Doc. 25, ¶¶ 8, 38).

Bobbie decided to file a Title IX complaint with the KU Office of Institutional Opportunity and Access (IOA) after she became fearful of pursuing a criminal rape case against a fellow law student. (Doc. 25, ¶ 20). She was struggling with the aftermath of the assault and her KU counselor accompanied her to meet with the IOA staff.  (Doc. 25, ¶ 66). The IOA is responsible for investigating complaints of discrimination and sexual harassment, including all forms of sexual violence. (Doc. 25, ¶ 151). According to KU policies, the IOA investigation process is independent of any other complaint process, including the choice to file a criminal complaint with law enforcement authorities or not. (Doc. 25, ¶ 166). Despite this policy, KU had an agreement with the City of Lawrence regarding investigations of cases involving sexual violence. (Doc. 25, ¶ 167).

The IOA staff told Bobbie she needed to make a statement, and suggested she make only one statement to the IOA and the police. (Doc. 25, ¶¶ 66, 67).  On October 24, 2018, Bobbie met with Kathryn Burns at the KU IOA office and provided a written statement, a log of events and a copy of text messages referencing the "date rape." (Doc. 25, ¶ 82). Burns then sent mutual no-contact

---

[4]     For example, a month after Plaintiff's rape, KU Law Professor Lucas was arrested on charges of driving under the influence. Lucas tweeted the next day: "Last evening, I attended a university event gathering. I consumed alcohol. At 10:45 pm, I decided to leave. When I got to my car I decided that I was not prepared to drive home to Kansas City…. Apparently, while waiting, I dozed off. …" *See* https://fox4kc.com/news/prosecutor-dismisses-dui-charge-against-kc-mayoral-candidate-quinton-lucas/.

directives to both Bobbie and Thompson on October 25, 2018. (Doc. 25, ¶ 86). KU also has policies that prohibit retaliation against those who file an IOA complaint and which encourage students who believe they are experiencing retaliation to notify the IOA office so that it can promptly respond to the allegations. (Doc. 25, ¶ 156). KU warned Thompson not to retaliate. (Doc. 25, ¶ 87).

Unbeknownst to Bobbie, and well before she gave her statement to the IOA, the LPD and KU's investigator had already discussed Bobbie's report of rape. (Doc. 25, ¶ 69). The LPD detective told Burns that he had concerns about "possible repercussions that could affect Joel Thompson as the reported suspect." (Doc. 25, ¶ 75). But Burns kept this secret from Bobbie.

Bobbie tried to attend law school classes at KU where her student assailant continued to attend classes, making her vulnerable to continuing harassment. (Doc. 25, ¶ 172). When Thompson began retaliating against her, she reported this to the IOA on November 14, 2018; Burns notified Thompson about the complaint, but took no further action. (Doc. 25, ¶¶ 100, 101).

Bobbie informed the IOA investigator that she suffered from generalized anxiety disorder, flashbacks, nightmares, and panic attacks which progressively worsened after the sexual assault as she saw Thompson on campus almost daily in the fall of 2018. (Doc. 25, ¶ 178). Yet KU did not put any interim measures in effect to protect Bobbie from further harassment or harm, which led to continued interactions with professors so troubling it made her violently ill after class. (Doc. 25, ¶¶ 26, 154, 155).

Law school administrators knew about Bobbie's IOA complaint. (Doc. 25, ¶ 91). One troubling interaction occurred in December 2018 when Law School Associate Dean Lumen Mulligan emailed Bobbie concerning the IOA investigation, and informed her that he had known Thompson for his entire law school experience and that Thompson "related his version of the events" to him. Mulligan informed Bobbie he reported this information to the IOA, which he understood to be a confidential investigation, and that he was surprised when two professors showed up in his office with the notice of investigation and the names of those involved. Mulligan told Bobbie he had reported all of this one-sided information to Dean Mazza and Associate Dean Kronk-Warner. (Doc. 25, ¶ 110).

Thompson's roommates and friends who were also KU law students acted to intimidate Bobbie. (Doc. 25, ¶ 186). She reported the hostile educational environment. (Doc. 25, ¶ 176-178). Again, KU did nothing. *Id.* KU *did,* however, continue a highly visible endorsement of her assailant. The law school prominently displayed posters of her assailant; the photo of her class prominently featured him. Plaintiff passed the posters every day, and they made her feel ill. (Doc. 25, ¶ 26)

Plaintiff secluded herself from friends and withdrew from KU activities. (Doc. 25, ¶ 187, 188).. (Doc. 25, ¶ 112). Bobbie missed weeks of school in the fall of 2018, dropped classes in December 2018 as well as in the spring of 2019, suffered panic attacks, anxiety and nightmares that left her exhausted, depressed and unable to cope. (Doc. 25, ¶¶ 26, 112, 178, 194). KU's law school was aware of Bobbie's emotional state and the effect the IOA investigation had on her. (Doc. 25, ¶ 172).

Bobbie tried to return the next semester and avoid classes with her assailant. (Doc. 25, ¶ 112). However, in her administrative law class, Professor Lucas made a joke about the **#metoo** movement and, then during a February 5, 2019 class, stated his opinion that the Title IX process for sexual assault should be abolished. (Doc. 25, ¶ 122, 189). Lucas commented about the ongoing IOA investigation directly to Bobbie in class, which caused her to feel vulnerable, anxious and targeted. (Doc. 25, ¶ 189). On March 26, 2019, Bobbie reported these events to the IOA, copied KU's attorney, and provided a witness statement. (Doc. 25, ¶ 122). KU never investigated this claim. (Doc. 25, ¶ 123).

KU's failure to protect her from harm caused Bobbie to withdraw from this class as well as another class, to take incompletes in two classes, and prevented her from being able to graduate on schedule in May 2019. (Doc. 25, ¶¶ 124, 178, 190). She was pressured to quit school. (Doc. 25, ¶ 173).

Bobbie believed KU was investigating her valid report of rape; but without giving Bobbie any notice, KU's Title IX office acted in concert with LPD detectives to investigate *her*. (Doc. 25, ¶ 24). The FAC details the concerted action between KU and the police. (Doc. 25, ¶¶ 83, 85, 94, 95, 96, 97, 102, 103, 104). KU adopted the LPD's premise that Bobbie was "lying," without any investigation, much less an independent investigation by KU. (Doc. 25, ¶ 203).

Bobbie revoked her consent for the LPD to share information with KU, but Burns and the detective continued to share information on the "investigation." (Doc. 25, ¶¶ 106, 118). KU never investigated Bobbie's injuries, her continuing trauma, or the background of her assailant. KU never notified Bobbie that she was a target of its investigation. (Doc. 25, ¶ 23). KU disregarded any training about trauma-informed interviewing and instead sought to discredit the victim. (Doc. 25, ¶ 24).

In December 2018 and after, Bobbie continued to provide witness names and information to the IOA, still unaware that both the LPD and KU were treating her as the suspect. (Doc. 25, ¶¶ 109, 121, 125, 128). Despite her efforts, KU never interviewed many of the witnesses favorable to Bobbie. (Doc. 25, ¶¶ 130, 175, 204). Burns still did not tell her she was working with police. (Doc. 25, ¶¶ 182).

On July 9, 2019, more than eight months after her first statement to the IOA, the IOA issued its report which concluded that she had "filed a false allegation of sexual assault," engaged in "serious misconduct" and referred her to the Office of Student Conduct. (Doc. 25, ¶¶ 25, 128, 129, 131, 179). The "findings" by the IOA adopted the false narrative that the LPD detectives concocted in October 2018 about Plaintiff's alleged "motivation to report Thompson." (Doc. 25, ¶ 174).

Bobbie exercised her right to appeal, which again reported the on-going retaliatory and hostile environment that was not recognized nor addressed by IOA. (Doc. 25, ¶¶ 175, 176, 177). KU rubber-stamped the IOA findings. (Doc. 25, ¶ 181). KU then subjected Bobbie to a student conduct hearing, a proceeding at which she risked expulsion from the University. (Doc. 25, ¶ 200).

In November 2019, Bobbie filed another formal complaint with the IOA making claims of on-going sex discrimination and retaliation. (Doc. 25, ¶ 197). Contemporaneously with her protected activity, she also reported the adverse actions she was subjected to, which had caused her post-traumatic stress and to become depressed and withdrawn. (Doc. 25, ¶¶ 201, 270)

KU failed to take reasonable steps to prevent sexual assaults from occurring at or after law school events, including failing to provide adequate supervision, warnings, training, guidance and education to its employees and students, and failing to adopt and implement simple, reasonable

policies that would lessen the chance of rapes, harassment, or retaliation from occurring. (Doc. 25, ¶¶ 199, 257). The likelihood of misconduct was so obvious that KU's failure amounted to deliberate indifference to the rights of Plaintiff. (Doc. 25, ¶ 199).

## III.   Questions Presented

A.   Whether Plaintiff has plausibly pled a Title IX claim under *Simpson*. (Count IV).

B.   Whether Plaintiff has plausibly pled a post-assault Title IX claim for a hostile education environment that was pervasive, severe and objectively offensive. (Count V).

C.   Whether Plaintiff plausibly pled deliberate indifference or that KU's actions were clearly unreasonable in light of known circumstances.

D.   Whether Plaintiff plausibly pled protected activity and adverse action for her Title IX claim for retaliation. (Count VI).

E.   Whether Plaintiff has plausibly pled a pre-assault Title IX claim for a hostile education environment or discrimination. (Count V).

F.   Whether KU is liable under Title IX for off-campus sexual assault under Title IX.

## IV.   Arguments and Authorities

### A.   Standard of review

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver,* 567 F.3d 1169, 1178 (10th Cir.2009)(quotation marks omitted). When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "accept as true all the factual allegations in the complaint" and "construe them in a light most favorable to the plaintiff" and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996). "Dismissal is inappropriate under Fed. R. Civ. P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief." *Id.*

"[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting

pleadings for failure to state a claim." *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989). The dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Twombly,* 550 U.S. at 570). With this inquiry, the Court should ignore, as exceeding the strictures of a motion to dismiss, Defendant's factual assertions outside the allegations in the FAC, as well as its arguments that attempt to engage the Court in weighing the evidence. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir.1985) (holding Rule 12(b)(6) consideration of documents attached to defendants' motion to dismiss improper). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly,* 550 U.S. at 556).

### B.    Pled facts that establish a Title IX *Simpson* claim (Count IV).

*Simpson v. Univ. of Colo. Boulder,* 500 F.3d 1170, 1174-1179 (10th Cir. 2007) permits Title IX liability to arise from official policies of funding recipients, namely policies that render a plaintiff vulnerable to sexual harassment, similar to 42 U.S.C. § 1983 cases. The *Simpson* plaintiffs were sexually assaulted by football players and high school recruits visiting the university's football program. Plaintiffs claimed that the university knew of the risk of sexual harassment of female students in connection with the football recruiting program and failed to take any action to prevent further harassment before their assaults. *Id.* at 1174. The Tenth Circuit held that summary judgment was erroneously granted for the university where facts showed university officials had knowledge of prior rapes and harassment in the context of the recruiting program, even though those prior acts were not committed against the same plaintiffs or by the same perpetrators, and that the conduct occurred off campus. In so doing, the Tenth Circuit distinguished the claims at issue in *Gebser v. Labo Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) and *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629 (1999) from the claims at issue in *Simpson,* as follows:

> We find it significant that in those cases there was no element of encouragement of

> the misconduct by the school district. … Here, however, the gist of the complaint is that CU sanctioned, supported, even funded, a program (showing recruits a "good time") that, without proper control, would encourage young men to engage in opprobrious acts. We do not think that the notice standards established for sexual-harassment claims in *Gebser* and *Davis* necessarily apply in this circumstance.

*Id.* at 1177. *Simpson* recognized that a funding recipient may be liable under Title IX when a violation is caused by a "policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Id.* A school is liable under Title IX when its deliberate indifference to known sexual violence "cause[s] students to undergo harassment **or** make[s] them liable or vulnerable to it." *Davis*, 526 U.S. at 644-45; *Rost ex rel. K.C. v. Steamboat Springs RE-2 School District*, 511 F.3d 1114, 1123 (10th Cir. 2008).

In *Doe v. University of Tennessee*, 186 F.Supp.3d 788 (M.D. Tenn. 2016), the district court applied *Simpson* and found potential grounds for establishing Title IX liability where: "the FAC has alleged a number of official policies by UT that rendered the plaintiffs vulnerable to assault." *Id.* at 806. In *Doe,* the FAC did not allege a "policy of hosting a discrete event at which the assaults took place, as in *Simpson*"; Instead, it alleged more broadly policies "related to encouraging and condoning similar types of events to entertain athletes and recruits, handling athlete discipline, housing students, and lack of sexual harassment training, among others." The court denied UT's motion to dismiss Doe's *Simpson* claims and held it was "a question of fact to determine whether any of these practices are, in fact, official policies of UT and, if so, whether they gave rise to the plaintiffs' assaults." *Id.* at 807-808.

In *Karasek v. Regents of University of California*, 956 F. 3d 1093 (9th Cir. 2020), the Ninth Circuit recognized that the reasoning of *Simpson, Gebser* and *Davis* supports Title IX liability when a school's official policy is one of deliberate indifference to sexual harassment in *any context* subject to the school's control. The policy in *Karasek* was based on the university's avoidance of Title IX reporting requirements. *Id.* at 1114. Ultimately, "the question is whether [plaintiffs] plausibly allege that UC had a policy of deliberate indifference that heightened the risk of sexual harassment on campus, resulting

in the assaults Appellants experienced." *Id.* at 1114.  *See also Doe v. Michigan State Univ.,* No. 1:18-cv-390, 2019 WL 5085567, at *8-10 (W.D. Mich. Aug. 21, 2019) (allowing an official policy claim where plaintiff alleged sexual assaults by student-athletes were handled differently "behind closed doors").

In this case, Bobbie pled facts that substantiate Title IX liability under *Simpson.* First, she pled that KU is a "funding recipient." (Doc. 25, ¶¶ 37, 238).  Second, she pled specific facts in her FAC that identified KU's official policies of fostering sexual misconduct toward female students as well as deliberate indifference to providing adequate training or guidance necessary for the program or policy. *Simpson,* 500 F.3d. at 1178; (*See* Doc. 25 ¶¶ 24, 167, 237). The "official policy" alleged in this case is similar to that in *Simpson* – to show recruits a "good time."  Here, the law school hosted events for students to drink and have a good time, which led to the sexual assault.

Furthermore, Plaintiff's official policy claim related to KU's investigation is similar to the "behind closed doors" policies in *Karasek* and *Doe v. Michigan State,* as well as in *Doe 12 v. Baylor University,* 336 F. Supp. 3d 763 (W.D. Texas 2018). In *Doe 12,* the district court denied defendant's motion to dismiss, holding: "the Court finds it plausible from the facts alleged that Baylor's practice of inadequately handling and even discouraging reports of peer sexual assault constituted an official policy." *Id.* at 782. The allegations in *Doe 12* were as follows:

> Specifically, Plaintiffs allege that Baylor and its staff discouraged them from reporting her assault(s), misled and lied to Plaintiffs about their options for reporting and accommodations under Title IX, failed to adequately investigate reported sexual assaults, and failed to take steps to ensure that students who did report would not be subjected to continuing assault and harassment, …. These alleged facts, construed as true, "raise a right to relief above the speculative level" that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault constituted an official policy of discrimination that created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain.

*Id.* at 783-784. (internal citations omitted). *See also Doe 1 v. Baylor University,* 240 F. Supp. 3d 646 (W.D. Texas 2017), where the alleged official policy was "a widespread pattern of discriminatory responses to female students' reports of sexual assault," which the court found arguably more egregious than alleging the university's knowledge of accusations against specific assailants prior to the initial assaults.

*Id.* at 653. The alleged facts that plaintiffs were misinformed about their Title IX rights, that Baylor failed to investigate and discouraged reports of sexual assault, and that Baylor falsely reported that no such assaults took place between 2008 and 2011, "could allow a jury to infer that Baylor's policy or custom of inadequately handling and even discouraging reports of peer sexual assault created a heightened risk of sexual assault, thereby inflicting the injury of which Plaintiffs complain." *Id.* at 662.

Bobbie has pled similar facts demonstrating that KU had an official policy of not investigating her reports of retaliation and harassment; concealing facts; failing to give her notice of their investigation into her; and otherwise inadequately responding to her reports.

### 1.   KU possessed official policies that resulted in harm to Plaintiff.

First, KU had a policy, custom and practice in its law school of sponsoring events for its students on and off campus where alcoholic beverages were served and tolerated; students were encouraged to participate in these events. (Doc. 25, ¶ 168). KU sanctioned, supported, and presumably funded these events. (Doc. 25, ¶¶ 8, 168, 239).  KU's event, which encouraged drinking by offering free alcoholic beverages to students, led to the September 2018 night of bar-hopping and Bobbie's rape. (Doc. 25, ¶ 169). KU's policy of deliberate indifference concerning the aftermath and predictable sexual misconduct following its sponsored, alcohol-infused events caused harm to Plaintiff and evinces its tolerance for sexual misconduct associated with intoxication. (Doc. 25, ¶¶, 24, 239).

Second, KU had an official policy of not investigating rapes in collusion with the LPD which caused harm to Plaintiff, including the charge of making a false report and the ensuing student conduct violation that threatened her law degree, her job and her reputation. (Doc. 25, ¶ 202). KU's policy of deliberate indifference to sexual assault or misconduct against female students, especially when collaborating with the LPD, created a "sexually hostile environment" and a heightened risk of sexual harassment that was known or obvious in a context subject to the school's investigative and disciplinary control. (Doc. 25, ¶ 240). KU's policy caused Bobbie to drop classes, delay her graduation and caused severe emotional distress.

Plaintiff alleges that these policies, and others, made her more vulnerable to the sexual assault, harassment and retaliation that did in fact occur. (Doc. 25, ¶¶ 241, 242, 243). As in *Simpson*, Plaintiff's sexual assault was "the natural, perhaps inevitable, consequence of an officially sanctioned but unsupervised effort to show recruits a 'good time.'" *Id.* at 1174-75. Plaintiff alleges, similar to *Simpson*, that KU "sanctioned, supported, even funded, a program … that, without proper control, would encourage young men to engage in opprobrious acts." *Id.* at 1177. KU employees with authority had actual knowledge that these policies posed a serious, specific threat to Plaintiff and others similarly situated. (Doc. 25, ¶¶ 243, 244). KU knew that sexual assaults were not only a problem, but a likely and predictable outcome. These allegations establish KU's *Simpson* liability for the harm to Bobbie.

## 2. Defendant KU's arguments are unavailing

Contrary to KU's position, Plaintiff did allege her rape resulted from KU's policy of serving alcohol at school sponsored, sanctioned and funded events. (*See* Doc. 25, ¶¶ 168, 169).

In addition, Plaintiff alleged KU had a policy of deliberate indifference to Bobbie's rights by not performing an independent, unbiased investigation into her sexual assault and instead conspiring with the LPD that targeted her, as a victim of sexual assault, for making a false report and rendered her vulnerable to further discrimination, harassment and retaliation. (Doc. 25, ¶¶ 182, 184, 202). KU disregards these allegations as well as the allegations that KU failed to provide adequate supervision, training, and guidance to its employees and students where the likelihood of misconduct was so obvious that KU's failure amounted to deliberate indifference to Plaintiff's rights. (Doc. 25, ¶ 199). Plaintiff clearly alleged KU was deliberately indifferent to the discrimination and harassment Plaintiff suffered, including taking reasonable steps to prevent sexual assaults from occurring by failing to train employees and failing to adopt and implement simple, reasonable policies that would lessen the chance of rapes, harassment, or retaliation from occurring. (Doc. 25, ¶ 257).

KU urges the court to "evaluate the two alleged 'official policies.'" (Doc. 30 at 22). On a motion to dismiss, the court only needs to evaluate whether plaintiff has alleged facts that show a

policy of deliberate indifference that caused her injuries. The policies alleged in the FAC are no more "breathtaking" than those articulated in *Doe v. University of Tennessee, Karasek, Doe 1 v. Baylor University* and *Doe 12 v. Baylor University, supra,* all cases in which motions to dismiss *Simpson* claims were denied.

KU cites no authority for its argument that no nexus exists if there is an intervening period of time between the school sponsored event and the sexual assault. No such authority exists. Regardless, Plaintiff alleged KU has conducted IOA investigations involving students who were raped or involved in off-campus sexual assaults on numerous occasions, some of which have led to serious disciplinary action toward the attacker, including expulsion, stemming from off-campus sexual misconduct. (Doc. 25, ¶ 180). This allegation establishes the nexus. Contrary to Defendant KU's assertions, plaintiff need not allege the number of drinks consumed or how she paid for them.[5] *Doe v. School District Number 1, Denver, Colorado*, 970 F.3d 1300, 1311-1312 (10th Cir. 2020).

KU erroneously argues that it must have "notice" of the risk of sexual harassment under *Simpson.* (Doc. 30 at 23). Actual notice standards established in *Gebser* and *Davis* do not apply in cases that involve official school policy. *Simpson*, 500 F.3d at 1177. *See also Mansourian v. Regents of Univ. of Cal.,* 602 F.3d 957, 967 (9th Cir. 2010) (holding that actual knowledge required by *Gebser* is not applicable in cases involving an official policy).

KU also mischaracterizes its policy of deliberate indifference to sexual harassment when it collaborates with the LPD, and by doing so fails to evaluate rape complaints or independently investigate them. (Doc. 30 at 23-24). KU did not "cooperate with the police"; it illegally conspired with the detectives, without Plaintiff's consent, to target Plaintiff for reporting rape. KU failed to conduct an independent, objective investigation. (Doc. 25, ¶¶ 182, 184).

KU compares this case to *Rost, supra,* and *C.R.K. v. U.S.D. 260*, 176 F. Supp.2d 1145 (D. Kan. 2001), both of which are K-12 cases in which the harassment occurred *before* the school year began

---

[5]    KU's reference to plaintiff's credit card receipts in its IOA investigation report was not pled in the FAC and that alleged extraneous fact should be disregarded as outside the pleadings and not considered at this stage of the proceedings.

and off-school grounds. Notably, both cases were decided on summary judgment and neither case compels this Court to dismiss Bobbie's claims here. In *C.R.K.*, the assault occurred over the summer, at a location without any connection to the school, and the *C.R.K.* plaintiff did not ask the school to investigate. 176 F. Supp. 2d at 1164.  This case fulfills factors lacking in *C.R.K.*, with the rape stemming from a law school sanctioned event, between students, when school was in session, and where the university exercised significant authority over the event and the students.

In *Rost*, the middle-school principal allowed the school resource officer ("SRO") to "take the lead" on investigating the sexual assault that occurred off school grounds prior to enrollment. 511 F.3d at 1121. The victim "refused to communicate" relevant information to the SRO or principal, preventing further investigation. *Id.* at 1123. The court found no deliberate indifference. *Id.* at 1121-23. In contrast, Bobbie was raped during the school year, following a sanctioned law school event. Where the school in *Rost* took active steps to ensure an investigation of the alleged sexual assault, KU did not do so and instead followed the lead of the LPD detectives with an investigation of the *victim*, not the assailant, thus ignoring Bobbie's report of rape. Moreover, in *support* of Bobbie's Title IX claim here, *Rost* acknowledged that even where harassment took place outside of the school's control and prior to enrollment, the *school could still be liable to a resulting hostile environment at school. Id.* at 1124.

KU's motion to dismiss Plaintiff's *Simpson* claims should be denied.

### C.  Pled facts establish Title IX Hostile Education Environment claims (Count V).

KU lumps two hostile education environment claims together and then confuses the elements of the pre-assault and post-assault hostile education environment claims.

### 1.     Overview of the post-assault Hostile Education Environment claim.

In *Farmer v. Kansas State University,* 918 F. 3d 1094 (10th Cir. 2019), the Tenth Circuit held: "Plaintiffs can state a viable Title IX claim for student-on-student harassment by alleging that the funding recipient's deliberate indifference caused them to be 'vulnerable to' further harassment without requiring an allegation of subsequent actual sexual harassment." *Id.* at 1104, 1109. In *Farmer*,

the Tenth Circuit distinguished its decisions in *Rost, supra,* and *Escue v. Northern Oklahoma College*, 450 F.3d 1146 (10th Cir. 2006), cases KU relies on here, finding that the allegation the school created an adverse educational environment "by its dismissive treatment of their complaints of rape … that reasonably prevented them from accessing the educational opportunities available to other students … was not presented in nor resolved by either *Rost* or *Escue*." *Id.* at 1106.  As in *Farmer*, Bobbie has stated a claim for Title IX harassment in her FAC. The facts giving rise to *Farmer*'s "post-assault" claims are strikingly similar to those Plaintiff alleges now.[6]

### a. Plaintiff has stated a claim for pervasive, severe and offensive post-assault liability

KU contends that a single instance of sexual assault does not meet the pervasive standard. Recently, the Tenth Circuit held that a victim of single incident of off-site sexual assault had adequately alleged that her harassment was severe, pervasive, and objectively offensive.  *Doe v. School District Number 1, Denver, Colorado*, 970 F.3d 1300, 1311-1312 (10th Cir. 2020).  Doe was sexually assaulted by a male classmate at his home on a Saturday night and she reported the assault to the school the following Monday. Doe then experienced "backlash from her peers who had heard about the assault," which she reported to the school. Her assailant's friends verbally harassed and bullied her. The harassment eventually caused her to transfer to another school. Finding that Doe had pled the harassment she experienced after she reported her rape was discrimination on the basis of sex, the court stated:

> "A plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face." *Bekkem v. Wilkie,* 915 F.3d 1258, 1275 (10th Cir. 2019) … But the plaintiff is not required to prove her case at the motion-to-dismiss stage. *See id.* at 1274 … Further, matters of degree—such as severity and pervasiveness—are often best left to the jury. Thus, we have observed that "**the severity and pervasiveness evaluation** is particularly unsuited for summary judgment because it is quintessentially a question of fact," *O'Shea v. Yellow Tech. Servs., Inc.,* 185 F.3d 1093, 1098 (10th Cir. 1999); **and it is even less suited for dismissal on the pleadings.**

---

[6]     In *Farmer*, the court summarized the allegations: "Plaintiffs sufficiently pled that KSU's deliberate indifference to their reports of rape made them vulnerable to harassment by alleging that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities KSU offers its students, and avoid going anywhere on campus without being accompanied by friends or sorority sisters." *Id.* at 1104-1105.

These considerations are particularly potent here. Ms. Doe alleges that she was continuously harassed for a number of months. **The complaint need not provide details of the time, place, offender, and precise statement for every incident**.

*Id.* at 1311-1312. (emphasis added). The Tenth Circuit reversed the dismissal of the Title IX complaint for failure to state a claim. *Id.* Thus, KU's citations to *Seamons v. Snow*, 84 F.3d 1226 (10th Cir. 1996) and *Cubie v. Bryan Career Coll., Inc.*, 244 F. Supp. 2d 1191 (D. Kan. 2003) for such a pervasiveness requirement have been overruled and are without merit.

A single incident of sexual assault or rape can give rise to post-assault Title IX liability. *See Tackett v. University of Kansas*, 234 F.Supp.3d 1100, 1108 (D. Kan. 2017) (denying motion to dismiss where plaintiff pled facts showing KU responsible for post-assault conduct after a single incident of sexual assault). *See also Spencer v. University of New Mexico Board of Regents,* No. 15-CV-141 MCA/SCY, 2016 WL 10592223, (D.N.M. 2016), where the plaintiff alleged that while incapacitated, she was transported by a football player from an on-campus gathering to an off-campus location, placed in a car by three men and raped inside the vehicle. The *Spencer* court summarized the law on this subject:

- "A single act of severe sexual harassment—particularly a rape …. can support a Title IX claim where the claim is premised upon the school's response to the report of the incident of sexual harassment." (*citing Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 259, n.4 (6th Cir. 2000) and *S.S. v. Alexander*, 177 P.3d 724, 739 (Wash. Ct. App. 2008).

- "In the context of Title IX, "there is no 'one free rape' rule"; and a victim does not have to be raped twice before the school is required to respond appropriately." (*citing SS., 177 P.3d at 741.)

- "A jury may conclude that harassment is severe, pervasive, and objectively offensive from evidence that a student who is known to have perpetrated a sexual assault upon another student is permitted to continue attending the same school as the victim, leaving open the potential for interactions between the two." (*citing Doe ex rel. Doe v. Derby Bd. of Educ., 451 F.Supp.2d 438, 444 (D. Conn. 2006)).

- "[W]here the victim of student-on-student sexual harassment whose report of a rape was met with deliberate indifference by the school *voluntarily* withdraws from school to avoid exposure to further harassment, the voluntary withdrawal may yet support a finding that the school 'effectively barred her access to an educational opportunity[.]'" (*quoting Williams v. Bd. of Regents of Univ. Sys. of Georgia,* 477 F.3d 1282, 1296-98 (11th Cir. 2007)).

After distinguishing *Rost* and *Escue*, the *Spencer* court denied Defendant's motion to dismiss. *Id.*

Here, Bobbie has pled that the harassment she suffered was pervasive, severe and offensive, which deprived her of an educational benefit or opportunity. Her facts are strikingly similar to *Spencer*. She was raped by a fellow law student, and KU refused to investigate her complaint. Bobbie experienced serious safety issues when she was forced to continue attending school with her assailant, his friends, and his advocates. (Doc. 25, ¶¶ 172, 186). She secluded herself from friends and withdrew from activities.  (Doc. 25, ¶¶187, 188, 264). She pled that harassment she suffered from law school students and professors deprived her of educational opportunities when she was forced to withdraw from school. (Doc. 25, ¶¶ 124, 178, 190). The constant risk of encounter and lack of access to educational opportunities amounted to an intimidating, hostile, or offensive educational environment which interfered with her academic performance, participation, and opportunities. *See also Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F.Supp.2d 226, 233 (D. Conn. 2009) (a reasonable jury could find that forcing a victim of sexual assault to attend school with her assailant amounted to sufficiently severe harassment to deprive her of access to educational opportunities, based on "potential interactions.").

Defendant cites *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1059 (8th Cir. 2017), in support of its argument that a single incident of rape is not enough to state a claim. *K.T.* was a *pre-assault* Title IX claim involving a high school student-recruit who was sexually assaulted at a fraternity. The college did nothing other than cancel a scheduled conference with the girl and her parents. The Eighth Circuit found no actual notice for the claim and that the single incident was insufficient to show pervasive discrimination. Unlike *K.T.*, Plaintiff alleges *post-assault* harassment that was pervasive and offensive.

Defendant KU makes a spurious argument that the post-assault harassment she experienced from other students at the law school is not actionable because it is speech "protected under the First Amendment." (Doc. 30 at 28).  Defendant ignores the pled conduct of its own professors and administrators and cites no authority for the application of First Amendment protections in this case, or how it would serve as a defense in any manner to KU's conduct that violated Title IX. This "red-

herring" argument completely ignores the focus of this Title IX claim – that KU's deliberate indifference caused Plaintiff to be "vulnerable to" further harassment.

> **b.** **Plaintiff plausibly pled deliberate indifference for her Title IX claims.**

Under Title IX, the school must be found to have acted with legal culpability known as "deliberate indifference." To show deliberate indifference, KU must have acted in a **"clearly unreasonable"** manner. *Davis, supra,* 526 U.S. at 646-647. A response is "clearly unreasonable" when it is not calculated to be effective, or when repeated harassment demonstrates that it has not been effective. *Vance,* 231 F.3d at 262. ("Although talking to the offenders produced no results, [the school] continued to employ this ineffective method.... [O]nce [the school] had knowledge that its response was inadequate, it was required to take further reasonable action in light of the circumstances to avoid new liability."). In *Tackett*, the allegations that KU's administrator ignored complaints of harassment and did not investigate them "support[ed] a finding of deliberate indifference." 234 F.Supp.3d at 1108.

Contrary to KU's view of the facts, Plaintiff did plead deliberate indifference in several respects. Plaintiff pled facts showing her vulnerability and the further harassment she suffered. (See, e.g., Doc. 25, ¶¶ 172, 189, 257). Deliberate indifference may be shown by evidence that makes a student more vulnerable to sexual harassment or by evidence that results in additional harassment. *Davis,* 526 U.S. at 645; *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F.Supp.2d 438, 440, 444-45 (D. Conn. 2006) (funding recipient could be liable under Title IX for post-assault deliberate indifference which "constantly exposed" plaintiff "to the possibility of an encounter with" perpetrator, even absent evidence the perpetrator actually harassed the victim after she reported rape).

In *Rullo v. University of Pittsburgh-of the Commonwealth System of Higher Education*, No. 17-1380, 2020 WL 1472422 (W.D. Pa. 2020), on a summary judgment record, the court found the university's decision to not address the plaintiff's complaints while she attempted to attend law school classes in the face of ongoing intimidation and disparaging treatment raised a genuine issue of fact as to the university's deliberate indifference. *Rullo* is strikingly similar to the facts in this case.

Bobbie pled facts demonstrating KU lack of response to the harassment she suffered was deliberate indifference. (*See, e.g.*, Doc. 25, ¶¶ 122, 123, 189, 257). In *John Doe 4 v. Freeburg Community Consolidated School District No. 70*, 279 F.Supp.3d 807 (S.D. Ill. 2017), the school district's response to the prior harassment, or lack thereof, was undisputed evidence of deliberate indifference. *Id.* at 815. No response, a minimal response, or actual encouragement of sexual harassment will amount to deliberate indifference. *Simpson*, 500 F.3d at 1177-1179; *Escue*, 450 F.3d at 1155 (citing *Vance*, 231 F.3d at 260). KU is supposed to provide a setting free of harassment where anyone can feel safe and able to pursue her academic goals. (Doc. 25, ¶ 191). By refusing to respond to her reports of retaliation and harassment, and instead openly promoting her assailant and secretly lending him support, KU demonstrated its deliberate indifference and emboldened Thompson to influence professors and administrators in his favor. (Doc. 25, ¶ 185). KU's response was clearly unreasonable because the continuing conduct discouraged Bobbie from going to the administration for help. (Doc. 25, ¶ 193).

Bobbie pled facts showing KU's deliberate indifference to her complaint by its failure to investigate. (*See, e.g.*, Doc. 25, ¶¶ 177-180, 182-184, 192).[7] A failure to investigate and put a stop to harassment may constitute "gross negligence amounting to deliberate indifference." *Davis,* 526 U.S. at 654; *Doe v. School District No. 1,* 970 F.3d at 1314; (failure to document complaints or take them seriously is evidence of deliberate indifference); *see also Nave v. Indep. Sch. Dist. No. 20 of LeFlore Cty.,* 2018 WL 6419296 (E.D. Okla. Dec. 6, 2018) (lack of action in further investigating the incidents cited was clearly inadequate and deliberately indifferent.

KU's deliberate indifference was also apparent in how it concealed, rather than provided proper notice to Plaintiff that it was investigating *her*, demonstrating its discriminatory bias. (Doc. 25, ¶¶ 183, 257). In *Doe v. Oberlin College*, 963 F.3d 580 (6th Cir. 2020), the Sixth Circuit held that irregularities, including a suspect "not even informed of the specific allegations against him," and an

---

[7]      Notably, KU's same argument for dismissal was rejected in the *Tackett* case, where the pleaded facts demonstrated the school was still not investigating reports of harassment. *Tackett,* 234 F.Supp.3d at 1108.

investigation that took 120 days to complete, permit a plausible inference of sex discrimination. *Id.* at 586-587 (citing *Menaker v. Hofsta Univ.*, 935 F.3d 20, 33 (2d Cir. 2019)).

Failure to interview witnesses provided by the accused plausibly supported a Title IX discrimination claim. (Doc. 25, ¶ 182). *Lee v. University of New Mexico*, 449 F.Supp.3d 1071, 1140 (D.N.M. 2020) (discussing *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d. Cir. 2016) ("When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer ... that the evaluator has been influenced by bias.").

Contrary to KU's authority, *Doe v. Univ. of Miami*, 446 F. Supp. 3d 1000 (S.D. Fla. 2020) and *Moore v. Regents of the Univ. of California*, Civ. No. 15-5779 RS, 2016 WL 2961984 (N.D. Cal. May 23, 2016), KU did not reach a resolution of Bobbie IOA report for nearly **nine months** – a length of time that evinces deliberate indifference to the impact the investigation was having on her ability to participate as a student at KU. (Doc. 25, ¶¶ 124, 129-131, 257). A "lengthy and unjustified delay" in implementing remedial action can establish "deliberate indifference." *Davis*, 526 U.S. at 649 (failure to respond to complaints from plaintiff and other students for five months could establish "deliberate indifference."); *Hayut v. State University of New York*, 352 F.3d 733, 751 (2d Cir. 2003); *Doe v. University of Kentucky*, No. 5:15-cv-00296-JMH, 2016 WL 4578328 (E.D. Kentucky 2016). KU knew that a typical investigation takes about 60 calendar days, but extended the time frame only once. (Doc. 25, ¶ 111).

Contrary to KU's argument that the "conduct in her complaint was not based on Plaintiff's sex or an attempt to harass or to retaliate against her," the Tenth Circuit held that "further harassment" need not be *sexual* in nature. *Farmer*, 918 F.3d at 1104. KU's conduct ignored the reality that many off-campus sexual assaults adversely impact the on-campus educational environment for victims, just as it did for Bobbie. (Doc. 25, ¶ 196). KU's refusal to investigate and instead focusing on the victim sent a message that students can rape other students with no fear of school discipline. (Doc. 25, ¶ 195).

The facts in this case are contrary to those in *Rost*, where the police were investigating the

plaintiff's complaint, not the plaintiff herself. KU continued to conspire with the LPD for months after Plaintiff revoked her consent to share information, and by doing so, was deliberately indifferent. All reasonable inferences indicate KU was targeting Bobbie, not investigating her sexual assault report.

KU's "deliberate indifference" to the discrimination and harassment Bobbie Jo suffered has been adequately pled. "[W]hether a school acted with deliberate indifference is typically a question of fact to be resolved by the jury." *Joyce v. Wright State Univ.,* No. 3:17-CV-387, 2018 WL 3009105, at *6 (S.D. Ohio June 15, 2018). KU's motion to dismiss should be denied.

### 2.    Overview of the pre-assault Hostile Education Environment claim.

The Supreme Court has recognized Title IX claims for teacher-on-student sexual harassment in *Gebser*, 524 U.S. at 287 and for student-on-student harassment in *Davis*, 526 U.S. at 642. Sexual assault is a form of sexual harassment. *Vance*, 231 F.3d at 259. To state a claim under Title IX for student-on-student sexual harassment, a plaintiff must show that the school "(1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it … deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.,* 186 F.3d 1238, 1246 (10th Cir. 1999).

Here, KU claims a failure to plead "actual knowledge" of prior sexual harassment. Plaintiff does not disagree that evidence of prior reports of sexual assault or misconduct involving Plaintiff's assailant is sparce; that she has only information and belief that KU was aware of prior reports of sexual assault or sexual misconduct involving Thompson, (Doc. 25, ¶ 170), and that KU knew that Thompson had angry or violent confrontations in conjunction with law school sponsored events where he stated a female student did not need to "perpetuate a narrative wherein [he] was a predator" (Doc. 25, ¶ 171).[8] *See Lopez v. Metro. Gov't,* 646 F.Supp.2d 891 (M.D. Tenn. 2009) (defendant's notice of prior harassment against victims other than the plaintiff can give rise to Title IX liability).

---

[8]    The reasonable inference from this allegation is that the word "predator" was in reference to sexual conduct.

Without discovery, Plaintiff possesses only what was pled. Defendant possesses the evidence in support of this claim and the court should not dismiss at this stage of the proceedings. *See S.C. v. Lansing USD*, Case No. 18-2228-DDC-JPO, 2019 WL 1317503 (D. Kan. 2019).

### D.     Pled facts establish a Title IX retaliation claim.

The Supreme Court recognized a cause of action for retaliation as a form of discrimination under Title IX in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167, 173-174 (2005). There, the Court stated Title IX is a "**broadly written general prohibition on discrimination**…" *Id.* at 175 (emphasis added).[9] In *Jackson*, a male athletic coach sued under Title IX where he alleged that he had suffered adverse consequences for protesting discriminatory treatment of female athletes.

To state a claim for retaliation under Title IX, a plaintiff must allege that: 1) she engaged in protected activity; 2) defendant had knowledge of the protected activity; 3) materially adverse school-related action taken against plaintiff; and 4) a causal connection between the protected activity and the adverse action. *Tackett,* 234 F. Supp.3d at 1109; *see also Nave, supra.*

Contrary to KU's contention that Plaintiff's protected activity is based a "mistaken belief" that KU is responsible for actions of employees or students, Plaintiff claims that KU is responsible for its deliberate indifference to conduct by employees and students and she has pled facts to support a prima facie retaliation case. KU challenges only the first and third elements of this claim.

#### 1.     Pleaded facts show Plaintiff engaged in protected activity.

In Count VI of Plaintiff's FAC, she alleged that she engaged in at least four distinct instances of protected activity when she (1) reported her sexual assault to KU's IOA office and gave a statement in October 2018; (2) reported Thompson's harassment, retaliatory treatment and comments toward her in November 2018; (3) reported additional harassment or discriminatory treatment in her class

---

[9]     The broad coverage of Title IX is furthered by the stated intent in the U. S. Department of Education regulations that Title IX protect all individuals from retaliation. See 34 C.F.R. § 100.7(e).

with Prof. Lucas, in March 2019;[10] and (4) reported additional harassment, discriminatory treatment and retaliation in November 2019. (Doc. 25, ¶ 269). All of these reports were to the IOA office, and one was to KU's attorney. (Doc. 25, ¶¶ 82, 100, 122, 197). This is protected activity to which KU's response was "clearly unreasonable." (Doc. 25, ¶¶ 103, 123, 198).

KU asserts a report of rape by a fellow law student is not protected activity. (Doc. 30 at 34). There is no mistake that reporting sexual assault is protected activity. *Doe v. School District No. 1*, 970 F. 3d at 1310-1311; *Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1065-1066 (9th Cir. 2002) (collecting cases holding that physical sexual assault is sexual harassment).  Instead of looking at binding authority from the Supreme Court, or the Tenth Circuit, KU relies on a case from Florida for its position.[11]

> In *Jackson*, the Supreme Court held:
>
> Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act. It is a form of `discrimination' because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination.

*Id.* at 173-74. And as the Tenth Circuit explained in *Doe v. School District No. 1*:

> [A]ny harassment of her that was motivated by retaliatory animus for her complaint was "an intentional response to the nature of [her] complaint" and was therefore "discrimination `on the basis of sex."

*Id.* at 1311, citing *Jackson,* 544 U.S. at 173-74.

The District of Kansas found protected opposition to sex discrimination sufficient to state a retaliation claim under Title IX in *Zamora v. Unified Government*, Case No. 17-CV-2261-JAR 2019 WL 6052493 (D. Kan. 2019).  In *Zamora*, the plaintiff reported a juvenile detention center staffer's physical

---

[10]     Plaintiff believes that discovery will demonstrate the close relationship between her assailant and Lucas, which will show the continuing harassment and intimidation for which she complained in March 2019.

[11]     The district court decision in *Garrett v. Univ. of S. Fla. Bd. of Trustees,* 448 F. Supp. 3d 1286 (M.D. Fla. 2020) – that she engaged in protected activity by criticizing the school's disposition of her complaint – is inapposite on its facts and contrary to Supreme Court authority in *Jackson* and Tenth Circuit authority in *Doe v. School District No. 1.*

behavior toward a minor resident. The court stated that "a meritorious retaliation claim will stand even if the underlying discrimination claim fails" and found Zamora had established a subjective and objective reasonable belief that she reported conduct forbidden by Title IX sufficient to show protected opposition. *Id.* at *20. See also *Tackett*, 234 F.Supp.3d at 1109.

Plaintiff is protected from retaliation for her opposition to sexual discrimination as well as her participation in the IOA Title IX investigation. Bobbie reported she was being harassed and retaliated against for reporting the misconduct on three occasions. (Doc. 25, ¶¶ 100, 122, 197). "Title IX empowers a woman student to complain, without fear of retaliation, that the educational establishment treats women unequally." *Emeldi v. University of Oregon,* 698 F.3d 715, 725 (9th Cir. 2012). As pled in this case, KU gave her male assailant preferential treatment. (Doc 25, ¶¶ 25, 26, 69, 75, 91, 110, 129, 131, 174, 174).

Finally, contrary to KU's argument, Plaintiff did allege that KU's response was not adequate when it took no proactive steps to protect her, it failed to suspend her assailant or ban him from campus, it failed to conduct a timely or impartial investigation, it accused her of making a false report of sexual assault, it subjected her to a student conduct hearing and it deliberately failed to supervise employees that had the means and authority to stop the discrimination and retaliation she experienced – all of which was clearly unreasonable. (Doc. 25, ¶¶ 193, 275, 277). Plaintiff has alleged protected activity sufficient to state a claim for retaliation.

### 2.    Pleaded facts show Plaintiff suffered adverse action.

For Title IX retaliation, "a plaintiff need only show that a reasonable [student] would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable [student] from making or supporting a charge of discrimination." *Somoza v. University of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008) (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The Supreme Court recognized "context matters," and the court must assess the "significance" of the action in light of "the particular circumstances." *White*, 548 U.S. at 69.

25

Each case is "judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* at 71. The Tenth Circuit construes the term "adverse action" liberally. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013).

Materially adverse school-related action involving students is distinctly different than adverse action in an employment context.  In *Nave, supra,* conduct by teachers and students intended to intimidate the plaintiff, which school administrators permitted to occur, was "sufficient to present the issue of retaliation to the jury." *See also Rullo, supra* (Plaintiff forced to request a leave of absence and then dismissed for the academic year was adverse action); *Doe 1 v. George Washington University*, 369 F. Supp.3d 49 (D.D.C. 2019) ("demeaning, insulting, and ridiculing" statement was sufficient adverse action at motion to dismiss stage to support a chilling inference); *Tackett*, 234 F.Supp.3d at 1109 (denial of the opportunity to participate in winter training was sufficient adverse action).

In *Doe v. University of Tennessee*, 186 F.Supp.3d 788 (M.D. Tenn. 2016), the school's tolerance or condoning harassing behavior and its failure to respond to the plaintiff's complaints was adverse retaliatory harassment. *Id.* at 810-811. The court relied on Title VII coworker retaliatory harassment cases as support for finding adverse action, citing *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 347 (6th Cir. 2008); s*ee also Richardson v. New York State Dep't of Correctional Service,* 180 F.3d 426, 446 (2d Cir. 1999) ("unchecked" coworker harassment may constitute adverse employment action); *Knox v. Indiana,* 93 F.3d 1327, 1334 (7th Cir. 1996) (acquiescence in a coworker's retaliatory harassment was adverse action); *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264-65 (10th Cir. 1998) (co-worker hostility or retaliatory harassment may constitute adverse action).

In *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 986 (10th Cir.1996), the filing of knowingly false criminal charges against a plaintiff, because of their impact on future potential employment, constituted adverse employment action for the purposes of a retaliation claim. *See also Velikonja v. Gonzales,* 466 F.3d 122, 124 (D.C.Cir. 2006) (the "prospect" of an investigation of false accusations could dissuade a reasonable person from making or supporting a charge of discrimination).

In this case, Bobbie pled facts showing how KU's conduct adversely impacted her education, including intimidation and ostracization on campus and at the law school, accusing her of making a false report of sexual assault, subjecting her to ridicule and embarrassment in class, forcing her to drop classes and withdraw from school, and subjecting her to a student conduct hearing which threatened her law degree, her future as a lawyer, her job, and her reputation. (*See, e.g.,* Doc. 25, ¶¶ 184, 186, 193, 202, 264, 270). These facts, and the reasonable inferences derived therefrom, establish that KU took adverse action against her that deprived her of educational opportunities and would certainly deter other students from lodging complaints.

### 3.    Defendant KU's arguments are unavailing

KU suggests that Plaintiff's FAC is deficient because she does not "identify what the acts are, who committed them, when they were committed, etc., so KU, and the Court, are left to guess." Doc. 30 at 35-36. KU seeks more specificity in this FAC than Rule 8 requires to survive a motion to dismiss. *Doe v. School District No. 1,* 970 F.3d at 1311; *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) ("[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'").

KU cites *Rossley v. Drake University*, 958 F. 3d 679 (8th Cir. 2020), contending that plaintiff has not alleged facts to show the retaliation occurred in KU's programs or activities. *Rossley* was a summary judgment decision, involving a claim that the university directed a Board member not to frequent an off-campus tavern.  It has no application here, where Bobbie has alleged her adverse action occurred at KU law school, which is undisputedly one of KU's educational programs.

Defendant KU relies on summary judgment cases, such as *Rossley* and *Doe,* which are not controlling at the motion to dismiss stage. Nothing was "standard" in the investigative process KU decided to follow in this case, and Plaintiff did not plead this alleged fact. Instead, Plaintiff pled KU was deliberately indifferent to her when it targeted her for making a false report because she reported KU's "poster boy" of rape.  "Being forced to withdraw from classes which denied and delayed

educational opportunities," as alleged, (Doc. 25, ¶ 270(d)), is adverse action. *Rullo, supra.*

Reading the FAC as a whole, Plaintiff has pled sufficient facts to demonstrate adverse action for her retaliation claim.  She also pled that the IOA personnel had notice of her claims, that the Dean and administrators had knowledge of her IOA complaint and that KU was deliberately indifferent to the harassment and discrimination she endured. Section IV., C., 1., b. The motion should be denied.

### E.   Rebuttal to KU's "threshold" argument

KU seeks a *per se* rule that an educational institution has no Title IX liability for sexual misconduct that occurs off-campus. The Supreme Court and Tenth Circuit do not recognize such a rule. And KU has not provided any precedent or persuasive support for its contention.

When examining off-campus sexual harassment under *Davis*, the Tenth Circuit adopted a nexus requirement for Title IX liability, but explicitly *rejected* a bright line rule distinguishing a school's obligations regarding on-campus sexual harassment as opposed to off-campus harassment, stating "We do not suggest that harassment occurring off school grounds cannot as a matter of law create liability under Title IX." *Rost,* 511 F.3d at 1121 n.1. "Ultimately, it is the school's response to the harassment, and exacerbation of the harassment, which is placed at issue under Title IX." *Opatz v. Boise State University*, No. CV-PI-2014-0004132, *35 (Idaho Dist. Ct. 4th Dist. 2015) (summary judgment denied for student rape that was *off-campus at a private home*).

The Department of Education's guidance has recognized that Title IX extends to off-campus harassment for nearly 25 years:

> Title IX protects students in connection with all of the academic, educational, extra-curricular, athletic, and other programs of the school, whether they take place in the facilities of the school, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere.

U.S. Dept. of Educ., Office for Civil Rights, *Sexual Harassment Guidance* (1997).

*Simpson* imposed liability under Title IX for the rapes at an *off-campus* apartment. 500 F.3d at 1185. In *Kinsman v. Fla. State Univ. Bd. of Trustees*, No. 4L15cv235-MW/CAS (N.D. Fla. 2015), the

plaintiff alleged that "another FSU student – the football player Jameis Winston – raped her at an off-campus apartment. . ."  The court denied FSU's motion to dismiss Kinsman's Title IX suit for failure to properly investigate or respond to the rape, despite the off-campus, private location of the assault. *Id.* at \*15. S*ee also Crandell v. New York College of Osteopathic Med.,*87 F. Supp. 2d 304, 316, n.126 (S.D.N.Y. 2000) ("Courts frequently have upheld sexual harassment claims under Title IX where some or all of the alleged misconduct occurred off campus," (listing cases); nexus was sufficient).

Contrary to KU's contention, Plaintiff pled that the assault occurred in conjunction with a KU law school sanctioned activity.  (Doc. 25, ¶¶ 8, 168).  See Section IV. B., above.  KU has substantial control over off-campus conduct that violates its policies and affects its educational programs and activities. (Doc. 25, ¶ 157, 158).  As the FAC pled, KU's student conduct policy provided explicit *disciplinary authority* over Bobbie's assailant, who was a KU law school student. (Doc. 25, ¶¶ 156, 158-162).  Not only did KU have control over her assailant, it had control over the law school's programs and activities. (Doc. 25, ¶ 164). Defendant KU's sexual harassment policy and its discrimination policy clearly cover "off-campus" conduct that has continuing adverse effects on campus in the context of an education program or activity. (Doc. 25, ¶¶ 157, 162, 164, 180).  Plaintiff pled that KU has inconsistently used its disciplinary authority over incidents of off-campus rape. (Doc. 25, ¶¶ 180, 196).  KU had disciplinary authority and simply chose not to use it here, exhibiting deliberate indifference.

KU relies heavily on *Weckhorst v. Kansas State University,* 241 F. Supp. 3d 1154, 1164 (D. Kan. 2017). However, the points relied upon from *Weckhorst* are contrary to subsequent Tenth Circuit law. *See, e.g., Doe v. School District No. 1, supra,* where plaintiff stated a claim for Title IX liability even though the sexual assault occurred off premises and on a Saturday night.  Moreover, *Weckhorst* only looked at a Title IX liability for *pre-assault* actions, not actions arising under the *Simpson, Farmer* or *Jackson* theories.

Finally, KU's "threshold" argument – that the alleged sexual assault must occur in a University "program or activity" – is misplaced because it only applies to "pre-assault" cases.  *Davis* does not say "geographic location" – instead the Supreme Court requires deliberate indifference that subjects

students to harassment or makes them vulnerable to it. 526 U.S. at 644-645. Defining the context of "under" "the operations of" a funding recipient, the Supreme Court looked at the plain meaning of the word "under" to be defined as "subject to the authority, direction, or supervision of." *Id.* at 645. Significantly, in *Davis*, the Supreme Court would find liability for student-on-student sexual harassment where **the harasser is under the school's disciplinary authority**." *Id.* at 646-647. (emphasis added). A school is "liable for its *own* decision to remain idle in the face of known student-on-student harassment in its schools." *Id.* at 641.

None of KU's authority mandates dismissal of this case. In *Roe v. St. Louis University,* 746 F.3d 874 (8th Cir. 2014), the court failed to address the control the university had over the "aftermath" of the rape. *Id.* at 879. While the university did not have sufficient control over the party hosted at an apartment, the court did not make the *location* of the assault a threshold liability question, as KU asks here. *Id.* at 880. *Roe* is contrary to binding authority in the Tenth Circuit. *See Doe v. School District No. 1.*

*Rost, supra,* is similarly distinguished. There, the court found no deliberate indifference as there were no facts that the school's response caused further harassment or made her vulnerable to it. *Id.* at 1123-1124. Here, Plaintiff pled both further harassment and her vulnerability to it.

In *Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1131-32 (D. Or. 2016), *aff'd,* 725 F. App'x 598 (9th Cir. 2018), the rapist was not a student or associate of the university and there was no Title IX liability because "no one connected to the university sexually assaulted Ms. Samuelson." *Id.* at 1133. Here, Bobbie's assailant was a KU law student.

## V.     Conclusion

Plaintiff has plausibly pleaded KU violated Plaintiff's rights to be free from discrimination and retaliation under Title IX.  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer* v. *Rhodes,* 416 U. S. 232, 236 (1974).  Defendant's motion should be denied.

Dated:  May 24, 2021                          Respectfully submitted,


                                             /s/ Sarah A. Brown
                                             Sarah Brown, KS #12130
                                             BROWN & CURRY, LLC
                                             1600 Genessee Street, Suite 956
                                             Kansas City, MO 64102
                                             (816) 756-5458 (phone)
                                             (816) 666-9596 (fax)
                                             sarah@brownandcurry.com


                                             /s/ Cheryl A. Pilate
                                             Cheryl A. Pilate, KS # 14601
                                             MORGAN PILATE, LLC
                                             926 Cherry St.
                                             Kansas City, Missouri 64106
                                             (816) 471.6694 (phone)
                                             (816) 472-3516 (fax)
                                             cpilate@morganpilate.com

                                             ATTORNEYS FOR PLAINTIFF



                          CERTIFICATE OF SERVICE

        I hereby certify that on May 25, 2021, the above and foregoing document was filed using the

Court's CM/ECF system which sent notice to all counsel of record.


                                             /s/ Sarah A. Brown
                                             Attorney for Plaintiff