IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOBBIE JO HOROCOFSKY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-02529-JWB-KGG |
| ) | |
| CITY OF LAWRENCE, KANSAS, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION TO RECONSIDER, ALTER OR AMEND THE MEMORDANDUM AND ORDER ENTERED MAY 5, 2022 REGARDING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff moves the court to reconsider, revise, alter or amend its Memorandum and Order entered May 5, 2022 disposing of all of Plaintiff's Title IX claims against the University of Kansas and disposing of Plaintiff's 42 U.S.C §1983 (and §1985) claims under *Monell*, for malicious prosecution, and conspiracy against the City of Lawrence and defendants Cottengim, Nicholson and Affalter.

**I.     Nature of the matter before the court.**

Plaintiff seeks reconsideration of the May 5, 2022 Memorandum and Order.  Although the Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration, Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." *Pinkney v. TBC Corp*., No. 2:19-CV-02680-HLT, 2020 WL 1528544 (D. Kan. Mar. 31, 2020), citing Fed. R. Civ. P. 54(b).

In the District of Kansas, there is uncertainty as to whether orders disposing of some, but not all claims, are dispositive or non-dispositive. *See Jordan v. Sprint Nextel Corp.,* 3 F. Supp. 3d

917, 935-36 (D. Kan. 2014) (citation omitted). D. Kan. Rule 7.3(b) governs motions to reconsider non-dispositive orders, assuming the order granting in part and denying in part Defendants' motions to dismiss is a non-dispositive order. This motion is timely as it is filed within fourteen days after the Court filed its Memorandum and Order. The decision regarding whether to grant or to deny a motion for reconsideration is left within the sound discretion of the district court. *Vanlerberghe v. Apfel,* 2000 WL 360104, at *1 (D. Kan. 2000) (citations omitted).

Plaintiff also seeks relief pursuant to D. Kan. Rule 7.3(a) and Fed. R. Civ. P. 59(e), and Fed. R. Civ. P. 60(b) to the extent it applies, as to the part of the court's order that was dispositive.

## II.     Concise statement of the facts

Bobbie Jo Horocofsky was sexually assaulted when she was incapacitated after drinking too much and unable to consent. Her attacker was a fellow law student who had been planning for months to assault her so that he could "one-up" the friend with whom he had a sexual rivalry. After seeing bruises all over her body, Bobbie told police – and later told the KU Title IX office – that she'd been sexually assaulted and she had a rape kit done. Police never investigated her report; instead, they relied on the age-old trope that she was a "woman scorned" who was retaliating against her then-boyfriend.

The fabrications and concoctions by police reflected the Lawrence Police Department's custom and practice of ignoring or discrediting women who complain of rape, failing to investigate their complaints, and instead protecting their male attackers. Police went one step further with Bobbie – targeting her as the wrongdoer and building a false case against her for making a "false report" to police.

The University of Kansas adopted the police version of events, denied Bobbie relief under Title IX, and enabled post-assault harassment and retaliation directed at her by students, instructors

and law school officials, all of which combined to cause her to temporarily derail her education.

The only claim for which Bobbie seeks damages as a result of the injury sustained during the rape are in her pre-assault Title IX claims. For her post-assault Title IX harassment and retaliation claims, as well as her Section 1983 and 1985 claims, she has alleged ongoing damages caused directly by the intentional, wrongful and malicious actions of defendants. See First Amended Complaint, Doc. 25.[1]

### III. Questions presented

    a.    Whether Plaintiff alleged sufficient facts to support her *Monell* claim.

    b.    Whether Plaintiff alleged sufficient facts to support her Section 1983 malicious prosecution claim.

    c.    Whether Plaintiff alleged sufficient facts to support her conspiracy claim.

    d.    Whether Plaintiff alleged sufficient facts to support her pre-assault *Simpson* claim under existing authority.

    e.    Whether Plaintiff alleged sufficient facts to support her post-assault Title IX harassment claim under existing authority.

    f.    Whether Plaintiff alleged sufficient facts to support her Title IX retaliation claim under existing authority.

    g.    Whether Plaintiff should be granted leave to amend her claims.

### IV. Argument and Authorities

Grounds warranting relief under D. Kan Rule 7.3(b) and Rule 59(e) are similar. The Court may grant relief where the moving party shows "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest

---

[1] The First Amended Complaint, Doc. 25, will hereinafter be referred to as the "FAC."

injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Reconsideration may … be appropriate 'where the court has misapprehended the facts, a party's position, or the controlling law.'" *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 664 (D. Kan. 2004) (quoting *Servants,* 204 F.3d at 1012). All of these grounds exist here.

When considering a motion to dismiss, courts are required to assume all of the well-pleaded facts in the complaint **to be true** and are required to view those facts in the light most favorable to the plaintiff. *Zinermon v. Burch,* 494 U.S. 113, 118 (1990). "[I]t must appear beyond doubt that the plaintiff can prove no set of facts that would entitle [her] to relief." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). A careful examination of the 25 pages of facts in the Court's Memorandum and Order depict a very different story than the more than 50 pages of facts Plaintiff alleged in her FAC. Reconsideration is necessary as it appears that the court failed to "accept as true all the factual allegations in the complaint" and "construe them in a light most favorable to the plaintiff" and "resolve all reasonable inferences in plaintiff's favor." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

For example, the very first paragraph of the Court's Memorandum and Order demonstrates the court's misapprehension of the facts of this case. Plaintiff alleged she had been raped, not that she "indicated" she had been raped. (See Doc 58 at 1). This is a credibility assessment of plaintiff, not an acceptance of the facts as alleged by plaintiff as true. Moreover, the facts in the FAC support her assertion of rape, as her assailant had been planning to sexually assault her prior to September 27, 2018, (FAC ¶¶ 12-14, 108(c)), and she was unable to consent due to her intoxication (which vitiates consent), (FAC ¶¶ 8, 11, 17, 18, 38, 108(a)).

The Court recites "facts" and quotes liberally from Defendant Cottengim's affidavit (Doc 58 at 2-4) appearing to accept his recitation of events as true. The court then characterizes

4

Plaintiff's FAC as arguing "the affidavit suffered from bias and incompleteness." (Doc. 58 at 16). Contrary to the Court's characterization, plaintiff alleged in her FAC that the Affidavit was "full of material and gross omissions, misleading statements, and unsupported claims" rendering it a false, fraudulent and misleading probable cause affidavit that excluded all facts supporting Bobbie's allegation of rape. (*See* FAC ¶ 108).

Plaintiff pled that expert testimony will show that rape victims react in many different ways and it is common for an assault victim's initial disclosure to be inaccurate or minimized. (FAC ¶141). This is why training is so important for law enforcement personnel. (FAC ¶¶ 138-146). Instead of viewing the facts in the light most favorable to Plaintiff, the court appeared to accept Detective Cottengim's beliefs and perspective, when his intent is a fact question for a jury, not a court.

This is not a summary judgment motion after fully developing the facts in support of Plaintiff's claims, although the court analysis appeared to treat it as such. Accordingly, Plaintiff seeks reconsideration for the court's misapprehension of Plaintiff's claims and facts in support of her claims as follows:

> **A.   Plaintiff alleged sufficient facts to support her *Monell* claim.**

The court misapprehended the facts in support of the *Monell* claim in Count I. The court, without basis, brushed away evidence of the widespread, long-standing and historical failures of the Lawrence Police Department ("LPD") to properly investigate sex assault allegations brought by women and to properly train and supervise its officers with respect to such allegations. The court ignored allegations of fact and evidence that the City has had notice of this problem and done nothing to correct it and provide supervision and training. The court disregarded a lengthy, detailed, factual recitation of the LPD's historical and on-going failure to properly conduct

investigations of sexual assault. (*See* FAC 133-146). Newspaper articles quoting women in Lawrence and statistical evidence are alleged in the FAC. *Id.* Moreover, Plaintiff cites interviews with three other sexual assault survivors who complained of the department's failure to properly investigate their complaints of sexual assault, collect physical evidence and/or interview corroborating witnesses. Instead, the LPD brushed them off and characterized them as unreliable witnesses who were engaged in sexual experimentation or "regret sex." (See FAC 136, 137).

The LPD's customs and practices of failing to properly train and supervise officers in the investigation of sexual assault led directly to the violation of Plaintiff's Constitutional rights that she and other women have suffered. These facts clearly establish notice to the LPD of constitutional deficiencies of training and supervision and satisfy the requisite elements of a *Monell* claim. (*See* FAC 133-146).

### B. Plaintiff alleged sufficient facts to support her Section 1983 malicious prosecution claim.

The court failed to properly apply the standards governing the consideration of a motion to dismiss and instead engaged in improper evidence weighing, consideration of individual motives and thinly disguised credibility evaluations. (Doc. 58 at 47-55); *see Zinermon,* 494 U.S. at 118. In so doing, the court misapprehended both the facts and the law.

The core of Plaintiff's case is that LPD detectives falsely claimed Bobbie lied and concocted a "motive" to explain why she had lied. To flesh out their false and fraudulent theory, detectives resorted to the age-old trope of a "woman scorned" and claimed that Bobbie had lied about the rape in retaliation against her then-boyfriend (and her attacker's best friend), Kriston Guillot, with whom she had broken up. (FAC ¶¶ 17, 203).

In concocting the false case against Plaintiff, LPD detectives acted deliberately, maliciously and without *ever bothering to investigate the facts of her rape.* (FAC ¶¶ 15, 19, 23,

108). The fact that a prosecutor was misled by the false and fraudulent probable cause affidavit is not surprising; that was the intended result. Similarly, the fact that the state court was misled by the State's evidence at the preliminary hearing is similarly unsurprising. Notably, at that hearing, the court chose to focus on the handful of text messages that Plaintiff sent while she was intoxicated and still in the presence of her attacker, while never hearing about other text messages that indicated Bobbie's attacker had harbored for months a plan to sexually assault her. Thompson's graphic text messages with Guillot – where they referred to "train rides" and "tag teams" with Bobbie – are not references to consensual sex; they are references to assault. (FAC ¶¶ 13, 108). Similarly, the leering text messages of Thompson's friends, joking that an intoxicated Bobbie appeared "lolo," did nothing to give Thompson pause; indeed, Bobbie's obvious inability to consent gave Thompson the opportunity he wanted. (FAC ¶¶ 11-13).

Rather than presenting evidence, defendants' affidavit served up misleading statements, material omissions and fabrications. There was never any probable cause to charge or prosecute Bobbie, and defendants' "beliefs" about her motives were nothing more than calculated "spin" without evidentiary substance.

In its Order, this court repeatedly considered the likelihood that Bobbie was lying about the assault, suggesting at one point she could be viewed as having made an "error in judgment by engaging in consensual sex." (Doc.58 at 49-50). The court repeatedly discounted facts that support Bobbie's account, and, in so doing, failed to properly apply standards applicable to a motion to dismiss, which requires the court to view the facts in the FAC as true and regard them in the light most favorable to the Plaintiff. *See Zinermon*, 494 U.S. at 118.

In dismissing the significance of detectives' total failure to investigate Bobbie's complaint of rape and her physical injuries – which included vaginal bruising, a vaginal tear, and bruises on

her arms, legs and neck – the Court stated that Defendant Cottengim's affidavit actually recognized the injuries because it included a reference to a text message in which Bobbie says: "…I'm pretty sure it was borderline rape and I have the bruises and statements to prove it…." (Doc. 58 at 53). This quote is not used as evidence of Bobbie's injuries; rather, it is cited in the affidavit to *further* the claim that Bobbie is lying.

The Court's analysis is skewed and misapprehends both the facts and law. Specifically, it fails to properly apply the standards governing a motion to dismiss. *Zinermon,* 494 U.S. at 118. The court's conclusion that the "chain of causation" on the malicious prosecution claim is broken by a preliminary hearing finding lacks factual and legal basis when defendants ***never investigated the rape, never presented evidence of the rape and concocted a motive to support their false claim that Bobbie lied.***

### C. Plaintiff alleged sufficient facts to support her conspiracy claim

The court misapprehended the facts in support of the conspiracy claim and failed to properly apply the legal standards applicable to a motion to dismiss, which require the court to accept the allegations in the complaint as true and to view the facts in the light most favorable to the plaintiff. *See Zinermon v. Burch,* 494 U.S. 113, 118 (1990).

The court's order is a compendium of misstatements, including the assertion that Defendants Nicholson and Affalter "receive at most a passing mention in the course of the lengthy complaint." (Doc. 58 at 59). This is not accurate. A simple search of the document reveals that both are referenced by name more than 30 times, with specific descriptions of their role, their actions, and their involvement in various aspects of the conspiracy. There are also numerous additional references to "defendants" collectively.

This court's order found that Plaintiff's allegations were insufficient because they were "conclusory." Again, this is not accurate. The FAC is 73 pages in length and contains pages of detailed allegations, with dates, times and words spoken, all of which showed the individual defendants had a meeting of the minds and worked in close coordination with each other to covertly target Plaintiff for their "false report" case while outwardly treating her as a victim.

Collectively, they made a near-snap decision while still at the hospital to target Bobbie. When Bobbie decided she wanted no further involvement with the criminal process, they decided they shouldn't let their "false report" opportunity slip away. Affalter and Nicholson went to her home to conduct an interview, which they claimed was department policy. It was in that interview that Affalter and Nicholson planted the seed of "regret sex" and suggested that Bobbie might be one of those "females" who "mess[ed] up" and slept "with the wrong person." (FAC ¶ 61).

While expressing no concern for Bobbie, Defendants Nicholson, Affalter and Cottengim all expressed concern for Bobbie's male attacker and the impact a rape allegation might have on his career. (See FAC ¶¶ 10, 64, 216). To undermine the allegation against Thompson and also to scuttle Bobbie's Title IX complaint, the defendants worked in concert to manufacture a case against Bobbie built on the central fabrication that Bobbie accused Thompson of rape so she could retaliate against her then-boyfriend, Kriston Guillot, who was a friend of Thompson's. At no point did any of the defendants ever take any steps to try to investigate Bobbie's allegations that she was raped. Their only goal was to frame her as a liar and false reporter.

Nicholson, Cottengim and Affalter worked all worked in concert to violate Bobbie's civil rights by setting up this "false report" case, with the additional purpose and intent of using their "false reporter" case to discourage victims of rape from reporting those crimes. (See FAC ¶ 23, 184, 285). Plaintiff has amply and adequately pled a conspiracy to violate her civil rights.

### D. Plaintiff alleged sufficient facts to support her *Simpson* Title IX claim.

The court misapprehended the facts and the law relied upon by Plaintiff in support of her pre-assault Title IX claim under the authority and progeny of *Simpson v. Univ. of Colo. Boulder,* 500 F.3d 1170 (10th Cir. 2007). By characterizing *Simpson* as a "limited exception" to the requirement that a federally funded school is only responsible for harassment in programs or activities under its control, the court failed to recognize the plausibility of sexual assault occurring as a result of law school policies and practices as alleged and recognized by other courts following the *Simpson* opinion. Importantly, *Simpson* involved off-campus sexual assault by individuals who were not students, but recruits.

The court erroneously stated Plaintiff relies on *Doe v. School Dist. No. 1, Denver, Colo.*, and *Farmer v. Kansas State Univ.* in its analysis of Plaintiff's *Simpson* claim. (*See* Doc 58 at 32). *Doe* was a case KU relied on for a singular point, and *Farmer* was relied on by Plaintiff for her post-assault harassment claim, not her pre-assault *Simpson* claim.

Plaintiff's allegations fall squarely within the analysis articulated by Simpson's progeny – *Doe v. University of Tennessee*, 186 F.Supp.3d 788 (M.D. Tenn. 2016); *Karasek v. Regents of University of California*, 956 F. 3d 1093 (9th Cir. 2020); *Doe 1 v. Baylor University*, 240 F. Supp. 3d 646 (W.D. Texas 2017); and *Doe 12 v. Baylor University*, 336 F. Supp. 3d 763 (W.D. Texas 2018). The court did not address these cases in its Memorandum and Order. (*See* Doc 58 at 27-32). These cases legally support Plaintiff's claims against KU. Plaintiff's allegations of KU's failure to investigate reports of sexual assault and inadequately responding to her reports sufficiently alleged a "pre-assault" official policy claim under *Simpson* in Count IV.

### E. Plaintiff alleged sufficient facts to support her post-assault Title IX harassment claim.[2]

The court misapprehended the facts and the law relied upon by Plaintiff in support her claim "post-assault" Title IX claim against KU in Count V. Under *Farmer v. Kansas State University,* 918 F. 3d 1094 (10th Cir. 2019), plaintiff must allege facts that show KU's deliberate indifference caused her to be "'vulnerable to' further harassment without requiring an allegation of subsequent actual **sexual** harassment." *Id.* at 1104, 1109. The court's conclusion that plaintiff failed to allege any subsequent *sexual* harassment is not necessary under *Farmer*. (Doc. 58 at 34).

The court's conclusion that Plaintiff hostile environment claim rests on a single instance of sexual assault is clearly erroneous. Plaintiff's post-assault Title IX claim is based on KU's deliberate indifference to the harassment she experienced *after* she reported her rape.

The court erroneously confused the elements of a pre-assault harassment claim with a post-assault harassment claim and imposed requirements. (Doc. 58 at 33). In *Farmer*, the Tenth Circuit held that the "Plaintiffs sufficiently pled that KSU's deliberate indifference to their reports of rape made them vulnerable to harassment by alleging that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities KSU offers its students, and avoid going anywhere on campus without being accompanied by friends or sorority sisters." *Id.* at 1104-1105. Here, Plaintiff alleged facts that demonstrated KU's deliberate indifference to her report of rape caused her to be subjected to intimidation and harassment at the law school or made her vulnerable to it, which in turn caused her to be deprived of educational opportunities and benefits at KU. The FAC included facts demonstrating the

---

[2] Plaintiff does not ask for reconsideration of her pre-assault Title IX harassment claim, which requires actual knowledge of Thompson's sexual propensities or prior harassment before Plaintiff was raped.

pervasive and on-going hostile education environment Plaintiff was subjected to after her report of her rape. (*See* FAC 186-188, 191). Plaintiff experienced serious safety issues when she was forced to continue attending school with her assailant, his friends, and his advocates. (FAC ¶¶ 172, 186). She secluded herself from friends and withdrew from activities. (FAC ¶¶187, 188, 264). She pled that harassment she suffered from law school students and professors deprived her of educational opportunities when she was forced to withdraw from school. (FAC ¶¶ 124, 178, 190). The constant risk of encounter and lack of access to educational opportunities amounted to an intimidating, hostile, or offensive educational environment which interfered with her academic performance, participation, and opportunities. These facts establish KU endorsed, upheld and condoned the actions. While the court identified only three specific instances of harassment, Guillot's threats, Lucas' intimidation and the promotional picture of her male assailant, numerous other allegations of intimidation and harassment were alleged. (See FAC ¶¶ 110, 112, 122, 124, 173-177, 185-190, 193, 200). Plaintiff pled nearly identical facts in her FAC to those in *Farmer* and thus stated a claim for post assault harassment.

The court erred in discounting Plaintiff's claims of deliberate indifference as not being credible. (Doc. 58 at 35). A school is liable under Title IX when its deliberate indifference to known sexual violence "cause[s] students to undergo harassment or make[s] them liable or vulnerable to it." *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 644-645 (1999). Plaintiff advanced many allegations of KU's deliberate indifference to her report of rape, as well as her reports of retaliation. (*See* FAC ¶¶ 122, 123, 177-180, 182-185, 189, 191-193, 257). One was the length of time to reach a resolution of her IOA complaint. (*See* Doc. 51 at 21). "[W]hether a school acted with deliberate indifference is typically a question of fact to be resolved by the jury." *Joyce v. Wright State Univ.,* No. 3:17-CV-387, 2018 WL 3009105, at *6 (S.D. Ohio June 15, 2018).

KU's response to her report of sexual assault was clearly unreasonable. The facts, when read in the light most favorable to the plaintiff and assumed to be true, clearly demonstrate that KU's IOA office never investigated Plaintiff's report of sexual assault and instead conspired with the police to frame Bobbie for a false report. (*See* FAC ¶¶ 24, 96, 103, 106, 109, 121, 123, 128, 129, 131, 175- 177, 182, 183-184, 193, 195, 197-198, 203, 204). This is clearly unreasonable.

Finally, for her claim of damages form the hostile educational environment, Plaintiff has not pled or claimed her damages arise from the physical rape. Her damages stem from KU's deliberate indifference to her report of rape which denied her educational opportunities and related damages.

### F. Plaintiff alleged sufficient facts to support her Title IX retaliation claim.

The court misapprehended the facts and the law relied upon by Plaintiff in support of the Title IX retaliation claim. The court erroneously imported a requirement for a retaliation claim by stating the FAC failed to allege retaliatory conduct attributed to the University. (Doc. 58 at 39). *Gebster v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998), cited by the court, was a teacher-on-student sexual harassment case, not a retaliation case. And here, plaintiff did allege retaliatory conduct by the University through the actions of its administrators and officials.

Plaintiff stated a claim against KU under a "post-assault" *Jackson* retaliation theory in Count VI. After Bobbie reported the rape to KU and engaged in other protected activity, she was subjected to a hostile educational environment when KU failed to protect her and instead, condoned and encouraged the conduct. Many of the same facts that support her post-assault harassment claim support the retaliatory adverse conduct she was subjected to. (*See* FAC ¶ 110, 112, 122, 124, 173-177, 185-190, 193, 200).

Plaintiff's complaint did fall within the scope of Title IX. Her complaint of retaliation was not for injury caused by the rape, but for the adverse harassment and retaliatory conduct because she filed a Title IX complaint about the rape. As the Supreme Court stated in *Jackson v. Birmingham Bd. of Ed.*, 544 US 167, 178 (2005): "[T]he text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" Jackson was decided at the motion to dismiss stage and the Supreme Court stated: "At this stage of the proceedings, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Scheuer* v. *Rhodes,* 416 U. S. 232, 236 (1974).

The court imposed a good faith requirement on Plaintiff that her complaint of Title IX discrimination was objectively reasonable, citing cases from other jurisdictions in support. But under Tenth Circuit law, a complaint about an off-campus rape is objectively reasonable under Title IX. *See Simpson, supra.* The cases cited by the court are either employment discrimination cases under Title VII or out of circuit cases on facts distinguishable from the facts of this case.

### G. Leave to amend should have been allowed

The court should allow leave to amend Plaintiff's FAC as this is the proper relief prior to a dispositive dismissal. In highly contested civil rights cases, courts rarely require a "short and plain statement" in support of claims under Rule 8, but instead hold plaintiffs asserting civil rights claims to nearly meet a "summary judgment" standard for pleading facts in support of claims.

Plaintiff has filed her renewed motion for leave to amend and seeks leave to amend her First Amended Complaint to allege more specific instances in support of her claims that the court deemed deficient. As alleged in the companion motion, leave should be freely granted.

## V. Conclusion

"Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is apparent to the point of being indisputable." *Tri-State Truck Ins., Ltd. v. First Nat. Bank of Wamego*, 2011 WL 4691933 *3 (D. Kan. October 6, 2011) (internal quotations omitted). Here, the manifest injustice to Plaintiff is indisputably apparent. The court has construed the facts alleged in Plaintiff's FAC in a light not favorable to her and had misapplied the law to defeat her claims.

WHEREFORE, Plaintiff respectfully requests that the court reconsider its Memorandum and Order dated May 5, 2022, reinstate Plaintiff's claims that the court dismissed and for such further relief as the court deems just and proper.

Respectfully submitted,

/s/ Sarah A. Brown
Sarah Brown, KS #12130
BROWN & CURRY, LLC
1600 Genessee Street, Suite 956
Kansas City, MO 64102
(816) 756-5458 (phone)
(816) 666-9596 (fax)
sarah@brownandcurry.com

/s/ Cheryl A. Pilate
Cheryl A. Pilate, KS # 14601
MORGAN PILATE, LLC
926 Cherry St.
Kansas City, Missouri 64106
(816) 471.6694 (phone)
(816) 472-3516 (fax)
cpilate@morganpilate.com

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2022, the above and foregoing document was filed using the Court's CM/ECF system which sent notice to all counsel of record.

/s/ Sarah A. Brown
Attorney for Plaintiff