# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BOBBIE JO HOROCOFSKY,            )
                                 )
       Plaintiff,                 )
                                 )
vs.                              )   Case No. 20-2529-JWB-BGS
                                 )
CITY OF LAWRENCE, KANSAS;        )
CHARLES B. COTTENGIM;            )
KIMBERLEE A. NICHOLSON; and      )
DANIEL L. AFFALTER, JR.,         )
                                 )
       Defendants.                )

## MEMORANDUM & ORDER DENYING
## PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Now before the Court is Plaintiff's Motion for Leave to File Third Amended Complaint and memorandum in support.[1] (Docs. 192, 193.) Having reviewed the submissions of the parties, Plaintiff's motion is **DENIED** for the reasons set forth herein.

## FACTUAL BACKGROUND

### I.  Plaintiff's Initial Complaint (Doc. 1).

Plaintiff filed this lawsuit alleging violations of her civil rights and state law causes of action on October 23, 2020. (Doc. 1.) Defendant University and the City Defendants[2] timely moved to dismiss the case on December 23 and December 28, 2020, respectively. (Docs. 12 and 14.) Plaintiff did not respond to those dispositive motions, but instead sought leave to file a First Amended Complaint on March 2, 2021. (Doc. 23.) The basis for the request was in part to "assert three

---

[1] Plaintiff also asks to remove Defendant Affalter because he and Plaintiff "reached an agreement that he should be dismissed from the case." (Doc. 193, at 1.) Plaintiff has since filed a stipulation of dismissal regarding Affalter (Doc. 214), making this portion of the motion **MOOT**.

[2] The City Defendants consist of the City of Lawrence, Kansas, and its officers/employees Charles Cottengim, Kimberlee Nicholson, and Daniel L. Affalter, Jr.

additional state law counts against the City of Lawrence, and one additional state law count against the City and the three named detectives." (Doc. 23, ¶4.)

## II.     Plaintiff's First Amended Complaint (Doc. 25).

Plaintiff's motion to amend was granted and her First Amended Complaint was filed on March 4, 2021. (Doc. 25.) This remains the operative Complaint in this case. Therein, Plaintiff alleges violations of her civil rights pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, and the Fourth and Fourteenth Amendments to the United States Constitution. She also alleges that Defendants subjected her to a discriminatory and retaliatory educational environment in violation of Title IX, 20 U.S.C. §1681(a). (*See generally*, *id.*)

In essence, Plaintiff contends that, while a student at the Kansas University School of Law, she was raped but that Defendants did not conduct a legitimate investigation into her allegations. Rather, she contends "the police investigation, conducted largely without [her] knowledge, was not aimed at investigating the sexual assault … , but rather at proving she had lied." (*Id.*, at 3.) Plaintiff chose not to proceed with criminal charges against her alleged attacker, but rather was herself ultimately charged with three felony counts of making a false statement to police. (*Id.*, at 2, 4, 15; (Douglas County criminal case No. 19-CR-87 (hereinafter "the criminal case").) Plaintiff's First Amended Complaint brought claims for unconstitutional policies, customs, practices, and training, denial of equal protection under the Fourteenth Amendment, malicious prosecution and abuse of process in violation of the Fourth and Fourteenth Amendments, Title IX discrimination, hostile environment, and retaliation, conspiracy, intentional infliction of emotional distress, and respondeat superior liability. (*See generally, id.*)

## III.    Defendants' Motions to Dismiss and Resulting Motion to Amend (Docs. 29 and 31).

Defendants subsequently filed Motions to Dismiss on March 18, 2021 (Doc. 29) and April 1, 2021 (Doc. 31). Thereafter, Plaintiff filed an additional Motion for Leave to Amend Complaint, in

2

which she sought to "clarify two of her State Law claims, specifically alleging malicious prosecution and abuse of process claims against the individual defendants … ."  (Doc. 41, at 2.)  Plaintiff's counsel indicated that when responding to the City Defendants' motion to dismiss the First Amended Complaint, counsel "discovered that they had inadvertently not pled the intentional tort claims of malicious prosecution and abuse of process against the three named detectives, despite the fact that in her count for respondeat superior liability, plaintiff essentially did plead the intentional misconduct of the detectives."  (*Id.*)  Plaintiff contended that "[i]t should be no surprise to Defendant City that [she] intended to assert these claims against the individuals."  (*Id.*)  Defendant University and the City Defendants opposed this Motion to Amend.  (Docs. 44, 45.)

Magistrate Judge Kenneth Gale, who was then assigned to the case, denied that motion to amend, without prejudice, noting there were two Motions to Dismiss (Docs. 29, 31) then pending before the District Court.  (Doc. 50, text Order of 5/25/21.)  The Court determined that Plaintiff's motion would be more appropriately addressed, if necessary, after the District Court ruled on the pending dispositive motions.  (*Id.*)

On May 5, 2022, the District Court granted Defendant University's motion to dismiss.  (Doc. 58.)  The District Court also granted in part the motion to dismiss filed by the City Defendants, dismissing Plaintiff's §1983 claim against the City (Counts I), the "class of one" §1983 equal protection claim (Count II), the §1983 malicious prosecution and abuse of process claim (Count III), and the §1983 conspiracy claim (Count VII).  (*Id.*)  The City Defendants' motion was denied as to the gender-based equal protection claim (Count II), as well as the Kansas state law claims.  (*Id.*)

**IV.   Plaintiff's "Renewed Motion for Leave to File Second Amended Complaint" (Doc. 59) and Motion for Reconsideration (Doc. 60).**

Plaintiff then filed a "Renewed Motion for Leave to File Second Amended Complaint." (Doc. 59.)  Therein, Plaintiff reiterated her request to amend her First Amended Complaint to clarify

3

her state law claims and "specifically" allege malicious prosecution and abuse of process claims against the individual Defendants, which she again contended she had inadvertently not plead previously. (*Id.*, at 2.) Plaintiff also sought to "address perceived deficiencies in several of her claims, specifically the Simpson claim, post-assault harassment claim under Title IX, the retaliation claim under Title IX, the *Monell* Claim under Section 1983 and the malicious prosecution claim and the conspiracy claim." (*Id.*, at 1-2.)

Plaintiff simultaneously filed a Motion for Reconsideration (Doc. 60) of the District Court's Memorandum & Order on the Motions to Dismiss (Doc. 58). Plaintiff argued that the District Court erred by dismissing Plaintiff's Title IX claims against the University and her 42 U.S.C §1983 (and §1985) claims under *Monell*, for malicious prosecution, and conspiracy against the City of Lawrence and the individual Defendants. (*See generally* Doc. 60.)

The District Court denied both of these motions. (*See* Doc. 67.) In regard to the Motion to Amend, the District Court held that Plaintiff failed to raise the necessity of amendment in her briefing relating to Defendants' dispositive motions. (*Id.*, at 7.) The District Court continued that the "highly detailed allegations" contained in the 73 pages of Plaintiff's First Amended Complaint

> were the subject of substantial analysis and attention in the extensive briefing of the parties addressing the motions to dismiss. The Court also devoted substantial effort to its Order, which granted the University's motion, and granted in part and denied in part the City Defendants' motion. Throughout this entire process, Plaintiff made no suggestion that any specific amendment was warranted.
> This silence continues to the present, "Renewed" motion. The motion to amend recites the text of Rule 15(a), but otherwise offers not the slightest rationale for new changes to her federal claims, or explain how they would yield a different result. The proposed Second Amended Complaint attached to Plaintiff's motion has grown to almost 80 pages. The motion leaves the Defendants, and the Court, with the task of guessing how an amendment might affect Plaintiff's claims.
> Plaintiff's motion not only makes no explanation of the nature and effect of the proposed amendments, she offers no rationale for the substantial delay. Prejudice exists as well as delay, as Defendants committed to extensively briefing their motions to dismiss, an effort

4

> wasted if Plaintiff simply alters her complaint in response to the Order of the Court.  Here, the Court did not dismiss all claims against the City Defendants.  They are entitled to proceed with the case without further delay.  Delay and prejudice warrant denial of leave to amend.

(*Id.*, at 7-8 (citation omitted).)  The District Court also held that Plaintiff's proposed amendment would be futile because "the generalities advanced in the proposed complaint do not alter the legal standard for abuse of process, or negate the independent judgment of the District Attorney bringing charges against the Plaintiff."  (*Id.*, at 8 (citation omitted).)

## V. Motion to Strike Answer (Doc. 70).

Plaintiff next filed a Motion to Strike the Answer of Defendant City and its individual officer Defendants (Cottengim, Nicholson, and Affalter), noting that Defendants' Answer was filed out of time and without leave of Court.  (Doc. 71, at 2.)  These Defendants subsequently filed a Motion for Leave to File Answer Out of Time.  (Doc. 72.)  The undersigned Magistrate Judge denied the motion to strike and granted the motion to answer out of time, holding that "the delay of 25 days in the context of the history of this case is not prejudicial to the plaintiff and does not overcome the importance of resolving this case on the merits."  (Doc. 74, text Order of 9/2/22.)

## VI. Additional Motion to File Second Amended Complaint (Doc. 80).

Plaintiff subsequently filed her Motion to File Second Amended Complaint (Doc. 80) on October 28, 2022.  She acknowledged that the proposed Second Amended Complaint "is identical to the one Plaintiff sought leave to file in May 2021, that was denied without prejudice" by the undersigned Magistrate Judge given the then-pending  dispositive motions.  (*Id.*, at 4; *see also* Doc. 50, text Order of 5/25/21.)   Plaintiff contended that she "only wishes to correct an inadvertent omission, a request that the court denied seventeen months ago without prejudice."  (*Id.*)  She indicated that the proposed amended pleading "does not add any new parties or causes of action." (*Id.*)  She also contended that the present "'issue' has not been ruled upon because the proposed Second Amended Complaint that the district court denied leave to file in July 2022 was substantially

5

different than the Second Amended Complaint proposed in May 2021, and proposed again here." (*Id.*, at 5.)  That proposed amended pleading also included claims against the Defendant University which have previously been dismissed by the District Court.  Plaintiff asserted, however, that her motion is not related to the University and "was clearly only directed at adding individual [City] defendants to the state law claims, a request that the court had previously denied without prejudice." (Doc. 84, at 7.)

The City Defendants opposed that motion, arguing it should be considered an untimely "Motion for Reconsideration under D. Kan. R. 7.3(b) which was not brought within fourteen (14) days … ."  (Doc. 82, at 3.)  The City Defendants alternatively argued that Plaintiff's motion for leave is "improper, untimely, futile and prejudicial" to them.  (*Id.*)

Judge Gale denied the requested amendment, holding that

> [w]hile certain factual allegations in the proposed amended pleading (Doc. 80-1) may be new or may have been re-worded, the fact remains that Plaintiff is yet again attempting to bring claims that the District Court previously disallowed on substantive grounds. Allowing Plaintiff to now add these claims would subvert the prior holding of the District Court. (*See* Doc. 67.) Plaintiff's sparse motion presents the undersigned Magistrate Judge with no justification to do so.

(Doc. 85, at 9.)  Judge Gale continued that an amended pleading "would merely result in Defendants filing new motions to dismiss the exact same claims the parties and the District Court have already expended significant time, energy and resources briefing," which would "add significant additional delay to this case, which was filed more than two years ago and has only recently progressed to a Scheduling Order and the beginning of discovery."  (*Id.*, at 9-10.)  Judge Gale determined that the prejudice to Defendants would be unduly "significant."  (*Id.*)

Judge Gale also found the proposed claims against the Defendant University to be improper as they had previously been dismissed by the District Court.  (Doc. 85, at 12-13.)  Plaintiff asserted these claims were "merely retained … to preserve her rights on appeal."  (Doc. 84, at 1.)  Judge Gale

6

held that any attempt to preserve these claims for appeal was "unnecessary" and agreed with Defendant University that it "is no longer part of this case, and there is no basis for Plaintiff to [assert] any claims against [it] at this point, no matter the reason." (Doc 81, at 9 (citation omitted).)[3]

## VII.  Present "Motion for Leave to File Third Amended Complaint" (Doc. 192).[4]

In the motion currently before the Court, Plaintiff seeks permission to file a Third Amended Complaint adding "Count XII under 42 USC § 1983, a Claim for Unlawful Search and Seizure under the Fourth Amendment against Defendants Charles Cottengim and Kimberlee Nicholson." As a basis for this motion, Plaintiff contends she has newly discovered evidence to support that Defendant Detectives Cottengim and Nicholson "conducted an unlawful search under the Fourth Amendment when they downloaded the entire contents of Plaintiff's cellular phone without a warrant or consent to seize all such data." (*Id.*, at 2.)

Plaintiff asserts that during her initial interaction with Detective Nicholson on September 29, 2018, the only portion of Plaintiff's cell phone to which Defendants requested access was Plaintiff's text messages. (*Id.*, at 4.)  Plaintiff contends she

> informed police there were text messages exchanged with the assailant before and after the incident and mentions she has deleted a few of the messages with the assailant from her phone.  Nicholson explains the capabilities of her team to download phone evidence and asks Plaintiff if police can attempt to recover the messages.  Plaintiff is reluctant, but Nicholson further presses her, stating they could limit the download to the text messages, and not any additional content - such as photos.

---

[3] Plaintiff objected to this Magistrate Judge Order (Doc. 88), which was summarily overruled by the District Court (Doc. 104).

[4] Plaintiff explains that she has referred to a "Third" Amended Complaint in order "to differentiate it from the previous filed motions for leave to file a Second Amended Complaint, which were denied." (Doc. 193, at n.1 (citing Doc. 50, Doc. 67, and Doc 85).)  Plaintiff continues that "[i]f the Court requires this Amended Complaint to be filed as Second Amended Complaint, Plaintiff will so label it." *Id.*

7

(*Id.*)  According to Plaintiff, she consented "only to the collection of limited data and based solely on Nicholson's assurance the scope of the search would be limited to text messages related to the incident[.]"  (*Id.* (citing Doc. 193-7).)

Plaintiff continues that despite this qualified consent, the detectives subsequently testified that they "extracted the entire contents of [her] phone."  (*Id.*, at 6 (citing Doc. 193-3, at 71:8-21 and 64:1-71:21; Doc. 193-4, at 115:2-25).)  These depositions occurred in late July 2023.  (Docs. 193-3, 193-4.)  Plaintiff asserts that "[t]he unlawfully seized data included phone recordings, contacts, call logs, device locations, Bluetooth devices, log entries, passwords, voicemails, voice memos, web search history, videos, photographic and other cached image."  (Doc. 193, at 6 (citing Doc. 193-3, at 64:1-71:21; Doc. 193-4, at 115:2-25).)

Plaintiff argues that Defendant Cottengim's "rummage[ing]" through the contents of her telephone would be evidence of "further police bias and gender-based stereotypes."  (*Id.*, at 2.)

> Plaintiff's claim under the Fourth Amendment has emerged only during recent discovery. Plaintiff learned that Nicholson and Cottengim took no steps to limit the phone download to only text messages, as Nicholson had represented they would.  Instead, they performed an unlawful download of all data and contents of Plaintiff's iPhone, thereby vastly exceeding the scope of Plaintiff's limited consent to the download of only her text messages.[5]

(*Id.*)  Defendant Cottengim admitted that a warrant would be necessary for this type of search if no consent had been given.  (Doc. 206-1, at 198:20-199:13.)  Plaintiff continues that Defendants "proceeded to access, review, and utilize the unlawfully obtained information to aid in their investigation," which "further contributed to the grossly inaccurate gender-based stereotypes and biased conclusions concerning Plaintiff, serving as the basis for the criminal case."  (Doc. 193, at 6-7.)

---

[5]  *See* Doc. 193-3, at 198:20-199:13; Doc. 193-4, at 115:10-24; and Doc. 193-5, at 294:20-24.

Plaintiff contends that after she became aware of the unlawful comprehensive download of her cellphone, she "immediately sought the services of expert John Mallery to determine the scope of the download and the search." (Doc. 193, at 13.) Mallery's first opinion and report was served by Plaintiff on September 29, 2023. (Doc. 171.) Plaintiff then deposed Defendant Cottengim's supervisor, Detective Hayden Fowler, on October 12, 2023. In essence, Fowler testified that although the resulting search of Plaintiff's cellphone would focus on text messages, the entirety of the cell phone would be downloaded by the police. (Doc. 193-6, at 16.)

Plaintiff asserts that as a result of this October 2023 deposition testimony, she requested a supplemental opinion from her expert, Mallery, regarding the September 2018 search conducted on her cell phone. Mallery subsequently opined that the computer software used on Plaintiff's cellphone by the police department had the capacity to "limit a cellphone extraction" to specifically chosen artifacts, rather than a downloading of the entire phone as stated by Fowler. (Doc. 193-6, at 3-4.)

> When specific artifacts are selected, the software does not 'download the whole phone' but will download the selected artifacts. It will also read 'device information' from the phone which includes items such as make and model of the phone, serial number, IMEI (International Mobile Equipment Identity) number, among others. In my experience, it does not download the whole phone when specific artifacts are selected.

(*Id.*)

Mallery's supplemental expert opinion was received and served on Defendants on November 29, 2023, which was before the close of discovery, but after the deadline to amend pleadings. Plaintiff asserts that she "had no basis for including Count XII in her earlier Complaints because she had not yet learned or confirmed the Defendants' unlawful conduct until recently during discovery." (Doc. 193, at 3.) She contends that good cause now exists to allow her to amend

9

her Complaint after the deadline "and justice requires the amendment under Rule 15(a)." (*Id.*) The Court disagrees.

## ANALYSIS

I. **Legal Standards.**

The deadline to amend the pleadings in this case expired on October 28, 2022, some 14 months prior to the filing of the present motion (*see* Doc. 78, at 8). When a motion to amend a pleading is filed after the Scheduling Order deadline to do so, a party seeking leave to amend must demonstrate good cause under Fed. R. Civ. P. 16(b)(4), then satisfy rule 15(a). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). The Court will therefore first address Rule 16 analysis before determining if analysis under Rule 15 is necessary.

### A. Fed. R. Civ. P. 16 "Good Cause" Standard.

Under FRCP 16(b)(4) a schedule may be modified only for good cause and with the judge's consent. Good cause to modify the schedule exists upon a showing that the moving party could not have reasonably met the deadline despite that party's diligence. Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment. For instance, if a party is aware of "the underlying conduct but simply failed to raise [its] claims, … the claims are barred." . *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). On the other hand, the "good cause requirement may be satisfied … if a [party] learns new information through discovery or if the underlying law has changed." *Id.*

Plaintiff argues that she has established good cause to extend the deadline to amend "because of the new information demonstrating a clear violation of her rights under the Fourth Amendment." (Doc. 193, at 8.) Defendants assert that "Plaintiff offers no reason or good cause to justify an amendment of the complaint well outside of the time provided in the Scheduling Order to assert a cause of action based on facts that Plaintiff and her counsel knew prior to commencement

10

of this litigation." (Doc. 199, at 3.) Defendants contend

> Plaintiff knew that her cellular phone had been downloaded on September 29, 2018, because she provided it to the Detectives and testified at her preliminary hearing, that she gave her phone to Detective Nicholson as evidence to be examined. [Doc. 199-1, at 155:18-20] Plaintiff's criminal counsel questioned Detective Nicholson at the preliminary hearing in the criminal case on June 5, 2019, about the download and search of Plaintiff's cellular phone. [Doc. 199-2, at 277:20 –p. 281]. Plaintiff's counsel, Cheryl Pilate, represented Plaintiff in the underlying criminal proceedings [Doc. 199-3]. As Plaintiff's criminal defense attorney, Ms. Pilate received discovery from the Douglas County District Attorney that included all the recorded investigative interviews, including the September 29, 2018, conversation between Plaintiff and Detective Nicholson that forms the basis of the Fourth Amendment violation claim Plaintiff is seeking leave to bring against the Individual Defendants. … Plaintiff produced 'transcripts' that her attorney's [sic] had prepared of that September 29, 2018, conversation wherein Plaintiff consented to the search of her cellular phone. [Doc. 199-4.] These 'transcripts' … confirm[ed] that well before this civil litigation was filed, Plaintiff and her counsel were fully aware of the conversation where Plaintiff now claims only limited consent was given to search her cellular phone. [Doc. 199-5.] Also as part of discovery in the criminal case, the Douglas County District Attorney produced a copy of the extraction report and download of Plaintiff's cellular phone to Plaintiff and her counsel. [Doc. 199-6.]

(Doc. 199, at 4-5.)

The Court finds that the transcript of the conversation between Plaintiff and the detectives is not as cut and dry as Defendants make it out to be. It is apparent to the Court that in September 2018, Plaintiff could have reasonably believed that only her text messages were being copied. Even so, Defendants argue that the latest Plaintiff could have known about the extent of the search of her cell phone would have been when the State provided a Blue-ray copy of the complete download of her cellphone to her counsel during discovery in the criminal case in 2019. (Doc. 199-9; Doc. 199-6.)

According to Plaintiff, she was not made aware of the entirety and extent of the searches conducted of her phone until the exchange of certain discovery in the present civil case. She admits that her counsel received Blu-Ray discs on September 24, 2019,

> but the discs did not include the October 16, 2019, reports showing

11

> the searches that detectives made after the discs were produced. [Doc. 206-2, at ¶¶ 1-16; Doc. 206-3, at ¶ 10.] [These] … reports … were only discovered during discovery in this case, prompting the further investigation necessary to assert a Fourth Amendment claim. [These] reports … were only discovered when Plaintiff received the data on a flash drive and submitted it for her expert's review. [Doc. 206-3, at ¶ 10.] While it is undisputed that Plaintiff gave limited consent to search her text messages, it is the direct access to and search of other phone data that is the basis for adding a claim for violation of Plaintiff's Fourth Amendment rights.

(Doc. 206, at 2.) Plaintiff contends she was unaware that the search went beyond the scope of her consent until the testimony of the Defendant detectives in July 2023, the October 2023 testimony of Detective Fowler, and ultimately the resulting supplemental expert report from Mallery in November 2023, discussed *supra*.

The Court is not persuaded by Plaintiff's argument. The Court's perspective analysis hinges on when Plaintiff became aware that the entirety of her cell phone was downloaded by the police.

It is undisputed that discs with information regarding the downloaded cell phone were provided to Plaintiff in 2018/2019 as part of the criminal case. Plaintiff's retained expert in this civil matter, Mallery, was also involved as an expert on her behalf in the criminal case. Mallery certainly would have known or would have been on notice that her entire cell phone had been downloaded by the police once he reviewed the discs in question during the prior criminal proceedings. (*See* Doc. 199-7, at 12-13 (response to motion in limine filed on behalf of Bobbie Horocofsky in criminal case stating that John Mallery, a forensic phone examiner, "reviewed the results of the phone examinations performed by the police" and "studied the data that was extracted from these phones").)

For purposes of this Order, however, the Court will set aside that presumption. Instead, for purposes of this motion, the Court will assume that, at the very latest, Plaintiff was put on notice that the entire contents of her cell phone had been extracted by Defendants during the July 2023 depositions of the Defendant detectives. (Doc. 193, at 6(citing Doc. 193-3, at 71:8-21 and 64:1-

71:21; Doc. 193-4, at 115:2-25).)

Under these circumstances, the Court finds that Plaintiff has not established good cause, pursuant to Fed. R. Civ. P. 16, as to why the request to amend did not occur until after the subsequent report from her expert, which was received on November 29, 2023. It is illogical for Plaintiff to rely on Fowler's deposition testimony and Mallery's supplemental expert report because they are not relevant to whether the entire phone was downloaded in September 2018. Fowler testified as to the department's capabilities to download the phone while Mallery opined that the department should have been able to download only a portion of the phone. Neither of these bits of "new evidence" put Plaintiff on notice that her entire cell phone was downloaded by Defendants in 2018. Instead, giving Plaintiff the benefit of the doubt, she learned this during the July 2023 depositions of Cottengim and Nicholson (Docs. 193-3 and 193-4) – and she failed to move to amend in a timely manner. Plaintiff could have, but did not, move to amend in July 2023, some five months prior the filing of the present motion in December 2023.

Having failed to establish good cause to move to amend beyond the deadline in the Scheduling Order, the Court need not analyze Plaintiff's requested amendment under the standards of Fed. R. Civ. P. 15(a). Plaintiff's motion (Doc. 192) is **DENIED**.

**IT IS SO ORDERED.**

Dated January 30, 2024, at Wichita, Kansas.

/s/ Brooks G. Severson
Brooks G. Severson
U.S. Magistrate Judge