IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BOBBIE JO HOROCOFSKY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-02529 |
| | ) |
| **CITY OF LAWRENCE, KANSAS,** et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF DEFENDANTS' NON-RETAINED EXPERT RICHARD LOCKHART**

Plaintiff Bobbie Jo Horocofsky, by and through her counsel, moves this Court to exclude the testimony of Defendants' non-retained expert Richard Lockhart on the grounds that:

(1) his opinions are not grounded in the type of experience, training or education that are relevant to this case and are therefore unreliable and speculative;

(2) his opinions are not based on sufficient facts or data, as he admittedly did not review substantial portions of the record in the present case;

(3) his opinions rest in part on determinations of witness credibility, an improper area for expert testimony.

Fed. R. Evid. 702; *see also Kumho Tire Co. v Carmichael*, 526 U.S. 137, 141, (1999); *Daubert v Merrill Dow Pharms, Inc.,* 509 U.S. 579 (1993); *McIntyre v. Unified Government et al.,* 2022 WL 1746577 (D. Kan. 2022) (excluding testimony of proposed expert where witness had no relevant expertise and his opinion was speculative).

1

Lockhart is the current police chief in the City of Lawrence, and Defendants seek to rely on opinions from him to vouch for the decisions and actions of the detectives and supervisors in this case. Lockhart was not employed by the Lawrence Police Department at the time Defendants targeted Ms. Horocofsky with their biased and reckless investigation. Lockhart's *only* knowledge about the investigation is based on a limited and incomplete review of the case that did *not* include the audio and video recordings, medical records, photos of injuries, courtroom testimony, and relevant communications.

Lockhart's experience with sexual assault cases is scant, limited to a brief stint 30 years ago as a detective in Kansas City, Missouri. He has no particular or specialized knowledge regarding sexual assault cases, and he has no training in the investigation or supervision of such cases. In short, he has no specialized knowledge, skill, experience, training or education that would aid jurors in the determination of any issue. *See* Fed. R. Evid. 702.

Ms. Horocofsky was a third-year law student in September 2018 when, following a law school event and night of bar hopping, she woke up bruised and confused in the bed of fellow law student Joel Thompson, who told her his penis had been inside of her. She had little memory of what had happened. She later spoke briefly with police and underwent a sexual assault exam at the hospital. Although she decided she did not want to pursue criminal charges against her attacker, police decided to pursue *her* based solely on text messages they'd seen on her cell phone when she was still with her attacker and trying to downplay the situation with a friend.

Unknown to Plaintiff, the police targeted her in a months-long ruse while she was

struggling to attend classes, get counseling and proceed with a Title IX complaint. Defendants arrested her and charged her with three counts of making a false statement to police, even though she had lacked capacity to consent to sex with Thompson. The criminal case proceeded for nine months before being dismissed by the District Attorney.

Plaintiff's lawsuit alleges: (1) a violation of Equal Protection based on the intentional targeting of her as a female rape victim and the subsequent conduct of a biased and reckless investigation; (2) a claim of malicious prosecution based on those same facts, alleging that defendants acted with actual malice and submitted a materially false and misleading probable cause affidavit; (3) a claim of abuse of process by conducting an investigation not based on a proper law enforcement purpose and driven by gender bias; (4) the intentional infliction of emotional distress based on Defendants' extreme and outrageous conduct; and (5) vicarious liability (*respondeat superior*) under Kansas law against the City of Lawrence.

## I. LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the evaluation of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

The Court is to act as a gatekeeper, with the obligation to determine the admissibility of all expert testimony. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)). Expert testimony is admissible only if it is both relevant and reliable. *Id.* "The touchstone of the Court's inquiry is whether the testimony helps the factfinder understand evidence or determine a fact in issue." *Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.*, No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1–2 (D. Kan. May 27, 2014), *citing BioCore, Inc. v. Khosrowshahi,* 183 F.R.D. 695, 699 (D. Kan. 1998).

In order to rule on admissibility, the Court should determine whether the reasoning or methodology underlying the testimony is valid and whether the expert can properly apply it to the facts in issue. *Id.*, *citing Daubert,* 509 U.S. at 592-93; Fed. R. Evid. 104(a), 702. The Court makes this determination by applying the underlying methodology set forth in *Daubert*. *McIntyre*, 2022 WL 1746577 at *2 (citing *Schulenberg v BNSF Ry. Co.*, 911 F.3d 1276, 1283 (10th Cir. 2018)). The Court is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152.

Under *Kumho,* the Court considers whether the theory or technique: (1) has been or can be tested; (2) has been peer-reviewed; (3) has a known or potential error rate; (4) has standards controlling the technique's operation; and (5) has been generally accepted

within the relevant scientific or technical community. *McIntyre*, 2022 WL 1746577 at *2 (citing *Etherton v Owners Ins. Co.*, 892 F.3d 1209, 1217 (10th Cir. 2016)). The Court's gatekeeping function applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Murphy v. City of Farmington,* 2021 WL 1517939 *2 (D.N.M. 2021).

The Court must also determine if the testimony satisfies Rule 702's requirement of relevance, that is, it must help "the trier of fact to understand the evidence or determine a fact in issue." *McIntyre*, 2022 WL 1746577 at *2. The Court considers several factors, including whether the testimony concerns something "within the juror's common knowledge and experience, and whether it will usurp the jury's role of evaluating witness credibility." *Id*. (citing *United States v. Cushing*, 10 4th 1055, 1079 (10th Cir. 2021). As this Court has recognized, an expert may not simply tell the jury what result it should reach. *Am. Fam. Mut. Ins. Co.*, 2014 WL 2196416, at *1–2, *citing United States v. Simpson,* 7 F.3d 186, 188 (10th Cir.1993). An expert's personal opinion as to the weight of evidence would invade the province of the jury. *Id.* (citations omitted). Expert opinions that address matters that are equally within the jury's competence to understand and decide are not helpful and therefore inadmissible. *Id.* (citations omitted).

## II.     **LOCKHART'S OPINIONS**

Lockhart was not a retained expert witness and therefore did not provide an expert report. In their Designation of Expert Witnesses served on November 13, 2023, Defendants stated that the subject matter of Lockhart's testimony would cover his 33 years in law enforcement and that he would testify based on his review of investigative

reports, evidence and the probable cause affidavit of Charles Cottengim that the Defendants acted with probable cause and without gender bias during their investigation of Plaintiff's case. The Designation also stated that he was expected to testify regarding the policies and procedures of the Lawrence Police Department in 2018. (Ex. A, attachment). Lockhart's resume was attached to the Designation.

Defendants served a Supplemental Designation on December 20, 2023, adding some additional detail. (Ex. B). To accommodate scheduling issues, Lockhart was deposed in three sessions in January 2024. (*See* Exs. C, D, E).

Lockhart testified that his opinions were:

1. Defendants' investigation was done in a thorough manner.
2. There was no indication of gender bias in the investigation.
3. Probable cause existed.
4. It is not necessary to disprove the reported crime (rape) to determine that false information was provided.

(Ex. E, 223:9 – 224:2; Ex. D, 156:9-22). During his deposition, Lockhart also offered opinions on disputed facts and made determinations of witness credibility. *See* discussion at section C, *infra*.

## III. LOCKHART'S OPINIONS ARE NOT ADMISSIBLE

This Court should exclude Lockhart's opinions on three separate grounds:

(1) he has extremely minimal experience with sexual assault cases and no specialized training or knowledge pertaining to the handling of such cases and therefore he lacks the requisite knowledge, skill, experience and training necessary to aid the trier

6

of fact;

(2) his opinions are not based on sufficient facts or data, precluding the application of reliable principles or methods to the facts of this case as per *Kumho*; and

(3) his opinions improperly rely, in part, on determinations of witness credibility.

### A. Lockhart has no specialized knowledge, skill, experience or training in sexual assault investigations and is not qualified under Rule 702

Lockhart's background in police investigations is limited to a short stint three decades ago. His resume is attached as the last three pages of Defendants' Exhibit A, and it does not even mention Lockhart's tenure as a detective. Lockhart's career has primarily been spent in supervisory and administrative roles and in special assignments such as strategic planning. *Id*.

Lockhart attended the Kansas City, Missouri, Police Academy, graduating in 1990. (Ex. C, 68:10-22). At the Academy, he had no specific training on the handling of sex crimes investigation. (Ex. C, 70:2-19). He started his tenure on patrol in the KCMO police department and worked patrol for three or four years before serving as a detective from 1994 to 1995. (Ex. C, 5:7-11). During his brief tenure as a detective, he received no specialized training in sex crimes other than whatever he gleaned in eight weeks of field training with another detective. (Ex. C, 35:5-14, 74:19-22)

Lockhart recalls investigating some sex crimes cases but could not quantify the number of cases. (Ex. C, 77:3-14). He estimated that he was the primary or sole detective on a case only "few dozen" times, but some of those would have been "adult abuse" cases, which his unit also covered. (Ex. C, 77:3-14). Regarding sexual assault

7

cases in which the victim's consent was at issue, Lockhart estimated that he had handled "somewhere around" 10 such cases but couldn't recall exactly. (Ex. C, 37:3-14). "It would be a low number. I just can't give an exact number." (Ex. C, 26:17-18).

Cases in which the victim was intoxicated comprised an even smaller number. (Ex. C 37:15-25). When asked if the number could be as low as three or five cases, Lockhart testified that he couldn't "give a number." (*Id*.). Although he had "heard of" the issue of "alcohol blackout," he did not know it involved lack of memory. (Ex. C, 25:8-21). He could not recall alcohol blackout and a victim's resulting incapacity being an issue in any of his cases. (Ex. C, 25:8-21).

Lockhart also testified that he had never supervised a sexual assault investigation, except the "oversight" he would have had in his role as Chief. (Ex. C, 40:6-11).

None of Lockhart's specialized training during his decades in law enforcement has concerned sexual assault issues or the investigation of sexual assault. (Ex. C, 56:24-57:18). In his most analogous experience, Lockhart served as a "workplace harassment instructor" at the Kansas City Police Department, educating employees on sexual harassment and hostile work environment. (Ex. C, 60:3-61:15). Lockhart was familiar with the LPD's policy of Fair and Impartial Policing (FIP) which addresses the issue of "implicit bias" based on race, ethnicity, gender or a similar category. (Ex. C, 125:1-130:12). However, most of the training concerning "implicit bias" dealt with traffic stops and profiling. (Ex. C, 128:23–130:12).

After 26 years at the Kansas City Police Department, including a nine-year stint as commander of the "Media Unit," Lockhart moved to the Warrensburg Police Department

where he worked as the Chief of Police for six years. (Ex. A; attached resume). Warrensburg was a small department, with just three detectives, none of whom focused on sex crimes. (Ex. C, 28:21-29:7). The Department's policy manual was limited and not "really complete." (Ex. C, 29:8-13). Lockhart testified that during his tenure, the department made some progress in developing policies, but when he left in 2022, it still had no specific policy on investigating sex crimes, only a general policy on investigations. (Ex. C, 117:8-118:8).

In his role as Chief at the LPD, Lockhart reviews policies before they are issued. However, the primary role of coordinating and issuing policies is delegated to Major Casey Cooper. (Ex. C,124:12-25). During 2018 and 2019, when Plaintiff was investigated and charged, the LPD had no policy pertaining to the investigation of sexual assault cases. A specific policy was issued in January 2020, shortly after Ms. Horocofsky's case was dismissed. (Ex. F, 8:22-9:12; 58:16-59:20; 76:9-77:8).

As the above discussion establishes, Lockhart has almost no experience in investigating, supervising, or making policy decisions regarding the proper investigation of sex crimes. He also has no specialized training in the investigation of sex crimes or interviewing traumatized victims of such crimes. He therefore has no "specialized knowledge" that would aid the trier of fact. *See* Rule 702(a); *see also McIntyre*, 2022 WL at *5.

An expert's qualifications must be both "adequate in a general, qualitative sense (i.e., knowledge, skill experience, training or education as required by Rule 702)" and also "specific to the matters he proposes to address as an expert." *Lippe v. Howard*, 287

F. Supp.3d 1271, 1279 (W.D. Okla. 2018). Years spent in law enforcement do not alone qualify Lockhart as an expert. As a district court noted in an analogous case, "[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Murphy v. City of Farmington*, 2021 WL 1517939 (D.N.M. 2021). Lockhart does not have the specific knowledge and qualifications to serve as an expert in this case and his testimony should therefore be excluded.

**B. Lockhart's opinions are not based on sufficient facts or data, precluding the application of reliable principles or methods to the facts of this case**

Lockhart's review of Defendants' investigation in this case was very limited – focusing primarily on the police file and not the substantial, material evidence that contradicted or challenged Defendants' improper conclusions. Lockhart's limited review replicated the biased view of the police investigation, which focused from the beginning only on building a case *against* Ms. Horocofsky rather than investigating the alleged sexual assault.

Lockhart testified that his review of the facts of this case was limited to: (1) police reports; (2) some text messages exchanged by Plaintiff and others; (3) the probable cause affidavit; (4) "a pleading" by the District Attorney; and (5) some deposition summaries prepared by his attorney. (Ex. C: 13:21-20:15).[1]

Lockhart's review ***did not*** include many other items directly relevant to the case, including:

---

[1] Lockhart also reviewed the report and deposition of Plaintiff's expert, Cathy Garcia. (Ex. C, 14:1, 40:1-19)

1. Audio recordings of police interviews which included relevant facts and leads that were *not* documented in the police reports.

2. Video recordings of interviews which included relevant facts and leads that were *not* documented in the police reports.

3. Transcripts of audio and video recordings which included relevant facts and leads that were not documented in the police reports.

4. Deposition testimony, including the transcripts of the detectives who investigated Plaintiff.

5. Medical records of Ms. Horocofsky showing follow up care after the sexual assault and ongoing treatment for Post-Traumatic Stress Disorder that were *not* documented in the police reports.

6. Dozens of photographs of Ms. Horocofsky's injuries, taken by the SANE nurse examiner at Lawrence Memorial Hospital (showing bruising on Plaintiff's neck and bruising on both arms and legs);

7. The SANE examiner's report, which contained a diagram of Plaintiff's vaginal injuries, including a vaginal tear and vaginal bruising.

8. Email communications pertaining to the case.

9. Joel Thompson's text messages with friend Kriston Guillot that predated the sexual assault and referred to doing a "tag team" or "trade ride" with Plaintiff.

10. The transcript from the Preliminary Hearing, in which the detectives testified about their investigation.

(Ex. C, 14:1-15:2, 19:3-24); (Ex. D, 168:24-169:5, 184:24-186:21, 194:24-195:1, 198:6-

199:2); (Ex. E, 229:17-21, 235:8-23; 239:25-240:5, 245:25-246:1).

All of these materials are highly relevant to evaluating and providing an opinion in this case. By failing to include these documents and recordings in his review, Lockhart conducted a review that was aimed at supporting the detectives' goal of developing a "false statement" case.

The detectives had never informed Ms. Horocofsky that she was no longer viewed as a victim and had instead become their target. She had agreed to provide her rape kit identification number so that police could obtain the medical evidence, and when she did not provide that information on Cottengim's timeline – having no idea that he was investigating *her* – Cottengim did not follow up. Instead, the police proceeded with their false, malicious and biased case that would have been entirely contradicted by Ms. Horocofsky's medical exam report and the dozens of photos of her injuries. Lockhart did not consider any of these facts.

During the preliminary hearing, Cori Green, the SANE nurse coordinator, testified that the photographs of Ms. Horocofsky's injuries appeared to match the narrative of the assault she had provided to the nurse examiner. (Ex. G, 17-18). Because Lockhart did not review the preliminary hearing transcript or the SANE examination report and photos, this highly relevant information was not included in his review.

Similarly, Lockhart did not listen to the audio of Detective Nicholson's confrontational contact with Plaintiff at her home a few days after the hospital visit. Nicholson suggested to Plaintiff that she had made up her whole story, saying: "[I]t happens a lot in college towns, just things like females mess up or males mess up and

sleep with the wrong person….." (Ex H at 3; [Dep Ex. 28, reviewed by Nicholson]; Ex. I 206:13-216:24). Plaintiff firmly rejected this characterization, explaining she was confused when she woke up and played off the situation to her friend because of feared impact on her job. But Nicholson persisted: "And it looks like you cheated on your boyfriend and you're like 'Oh, shit…'". (Ex. H at 4; [Dep. Ex. 28]).

Because Lockhart did not review key evidence such as medical records, the SANE exam report and photos, and the audio of Nicholson's contact with Bobbie, he did not know many of the key facts that establish that the police investigation was indeed biased and targeted Plaintiff rather than investigating her allegation.

Rule 702 of the Federal Rules of Civil Procedure requires that the proposed expert's testimony be "based on sufficient facts or data" and result from the application of "reliable principles and methods." Lockhart's testimony does not satisfy this requirement and must therefore be excluded.

### C. Lockhart's opinions include credibility findings and/or resolve disputed issues of fact and must therefore be excluded

To the extent that Lockhart makes assumptions or determinations regarding witness credibility, his opinions are inadmissible. As this Court previously held: "An expert witness's personal belief as to the weight of evidence…would invade the province of the jury." *In re Motor Fuel Temperature Sales Pracs. Litig.*, No. 07-1840-KHV, 2012 WL 205893, at *2 (D. Kan. Jan. 19, 2012). The Tenth Circuit also makes clear this principle. *See United States v. Hill*, 749 F.3d 1250, 1261 (10th Cir. 2014) (such testimony "usurps a critical function of the jury" and "is not helpful to the jury, which can make its

own determination of credibility").

Lockhart's deposition testimony was filled with factual findings and assumptions. He opined, for instance, that a sexual assault by a stranger was a "much more dangerous situation" than an assault by an acquaintance. "If you are familiar with the person and you're colleagues and this (rape) happens it's not the same type of situation." (Ex. D, 174:10-15). Lockhart testified at one point that the "false statement" made by Plaintiff was that she said she was raped by Thompson. (Ex. D, 158:7-9). Later, he testified that from h(is review of the police reports, detectives did not conclude "definitively" that no rape occurred. (Ex. D, 191:21-24). Lockhart then identified a series of statements that he said, based on his review, were "false," based essentially on his determinations of credibility and disputed facts. (Ex. D, 192:9-194:22). He also made a series of explicit credibility determinations, agreeing (for instance) that he was crediting one of Thompson's friends over Plaintiff when their accounts conflicted. (Ex. E, 273:16-274:8).

The credibility of any witness is not an appropriate subject for expert testimony. *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014); *McIntyre*, 2022 WL 1746577 at *2. It is the exclusive function of the jury to weigh the evidence and determine witness credibility. *Id*.

Because Lockhart's opinions rest on determinations of witness credibility, which is the province of the jury, not an expert, his testimony should be excluded in its entirety.

WHEREFORE, for all of the above-stated reasons, Plaintiff requests that this Court enter an Order excluding the testimony of Richard Lockhart, or, alternatively, exclude his testimony in part, barring those portions of testimony that are outside the

14

areas of his expertise or which involve determinations of witness credibility.

        Respectfully submitted,

        /s/ Sarah A. Brown
        Sarah Brown, KS #12130
        BROWN & CURRY, LLC
        1600 Genessee Street, Suite 956
        Kansas City, MO 64102
        (816) 756-5458 (phone)
        (816) 666-9596 (fax)
        sarah@brownandcurry.com

        and

        /s/ Cheryl A. Pilate
        Cheryl A. Pilate, KS # 14601
        MORGAN PILATE, LLC
        926 Cherry St.
        Kansas City, Missouri 64106
        (816) 471.6694 (phone)
        (816) 472-3516 (fax)
        cpilate@morganpilate.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that the above and foregoing was served on all counsel of record via the court's electronic filing system on April 22, 2024.

        /s/ Cheryl A. Pilate