UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BOBBIE JO HOROCOFSKY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No 2:20-cv-02529-EFM |
| | ) | |
| CITY OF LAWRENCE, KANSAS; et. al. | ) | |
| Defendants. | ) | |

## REPLY TO RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants' have met their burden of establishing that judgment is appropriate as a matter of law. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). When deciding whether a party has met its burden of entitlement to summary judgment, the Court does not "weigh the evidence and determine the truth of the matter but determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Contrary to Plaintiff's Response, federal courts do not view summary judgment as a "disfavored shortcut" *Celotex*, 477 U.S. 317, 327 (1986).  Summary Judgment is an important procedure "designed to secure the just, speedy an inexpensive determination of every action." *Id.* (quoting Fed. R. Civ. P. 1). This is not a case where different inferences can be drawn from conflicting affidavits, rather the uncontroverted facts demonstrate that there are no genuine issues of material fact for trial and judgment as a matter of law is warranted. In an attempt to avoid summary judgment, Plaintiff bombarded Defendants and the Court with 251 additional facts, the majority of which are conclusory argument or completely irrelevant to the claims in her lawsuit and do not demonstrate any genuine issues of fact that would prevent entry of judgment as a matter of law.

Qualified immunity applies and protects the Individual Defendants because they did not violate Plaintiff's constitutional right to equal protection, nor did they violate a right that was clearly

4916424

established. Plaintiff's Response fails to support any of her proffered  state law claims and Summary Judgment is warranted.

## I.   DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS

**Objection to Plaintiff's Exhibits:** Exhibits 3, 8, 13, 16, 32, 35 and 37 are Affidavits from Melissa Eckard and Maci Morgan, paralegals working for Plaintiff's counsel who purportedly listened to police audio interviews, compared the same to unverified "transcripts", and thereafter made unidentified changes and corrections. The Affidavits do not create foundation for admission of the transcripts under Fed.R.Evid. 901. The Affidavits lack personal knowledge about the creation of the original "transcripts"; do not identify what changes were personally made to the transcripts; and fail to state facts that would be admissible in evidence. Pursuant to Rule 56(c)(4) and the Court's Summary Judgment Guidelines ("SJG") 12 and 14 these exhibits and the facts that rely on the same should be stricken. Fed.R.Civ.P. 56(e).

Plaintiff does not controvert the following facts with admissible evidence: 6, 13, 18, 28, 30, 31, 49, 51, 61, 77, 86, 98, 102, 107, 109, 123, 126 and 130, and these facts are admitted pursuant to Rule 56(e). Defendants will only address those facts Plaintiff attempts to controvert.

23. and 37.     Plaintiff does not controvert these facts, but improperly advances unsupported argument and conclusions which are not admissible evidence and these facts are admitted.

34. Plaintiff does not controvert this fact and it is admitted. (**Ex. A**, CITY031092).

43. Plaintiff does not controvert this fact and the improper argument is not admissible evidence. Ex. H states, "She is thinking of going ahead and making a full statement *and wanting to pursue the charges with this case*." Plaintiff's Ex. 53 is inadmissible hearsay which violates Rule 56 and SJG 12 and should be not be considered. This fact is admitted.

4916424

44. Plaintiff's reference to her own speculation does not dispute the record: Ex. A, CITY031097 states the interviews were conducted in response to Plaintiff's report of rape. This fact is admitted.

56. Plaintiff's response does not controvert this fact and the conclusions, commentary and argument should be disregarded pursuant to SJG 14. Plaintiff's reference to "*Id.*" does not identify any support for the response. This fact is admitted pursuant to Rule 56.

59. Plaintiff's response is not supported by admissible evidence (objection to Ex. 32 incorporated) and does not identify what is disputed or not supported by the cited record. This fact is admitted.

78. Plaintiff's response is pure argument advancing legal conclusions and commentary which are not admissible evidence and do not controvert this fact. The generic reference to her Statements of Facts and Arguments and Authorities cited in her brief does not meet the requirements of Rule 56(c) and violates SJG 6. The response should be disregarded, and the fact admitted pursuant to Rule 56.

81. and 83. Plaintiff's objections are improper. "Independent" is not vague or confusing as stated in DA Rieg's Affidavit; the entire investigative file was produced to Plaintiff's counsel in discovery. DSOF 90 and 91. These facts are not controverted pursuant to Rule 56(c) and are admitted.

85. Citation to inadmissible opinions from Plaintiff's retained expert does not dispute the fact as required under Rule 56(c) and the same is admitted. (Docs. 252, 299, 300).

87. and 88. Plaintiff's response is pure argument advancing legal conclusions which are not admissible evidence and do not controvert these facts pursuant to Rule 56. These facts are admitted.

91. Plaintiff's objection is improper and the remainder of the response is pure argument advancing inadmissible legal conclusions. (See Response to PSOF #148). Plaintiff does not controvert this fact pursuant to Rule 56 and it is admitted.

92. 93. 94. Plaintiff's responses are argument advancing legal conclusions which are not admissible evidence and do not controvert these facts, which are admitted pursuant to Rule 56.

96. Plaintiff's response is inadmissible argument advancing legal conclusions and do not controvert this fact. (Response to PSOF #148 incorporated). This fact is admitted pursuant to Rule 56.

103. Plaintiff's response advancing argument legal conclusions and opinions as to the propriety of Judge Martin's decision are not admissible evidence. Plaintiff's self-serving unsupported contention that Judge Martin's ruling was erroneous does not controvert the fact and it is admitted pursuant to Rule 56.

110. Plaintiff's response as to continued treatment does not controvert the basis for Dr. Saripalli's diagnosis of PTSD. This fact is admitted pursuant to Rule 56.

125. 127. 128. 129. 130. Plaintiff does not controvert these facts and inclusion of additional immaterial information does not create a genuine dispute of material fact pursuant to Rule 56 (c)(1)(B) and these facts are admitted.

## II. OBJECTIONS AND RESPONSES TO PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS

Plaintiff's 251 "facts" (the number is based on the improper inclusion of multiple unrelated statements in one numbered paragraph) do not set forth actual material facts that go towards the elements of her claims. The majority of which are conclusory unsupported arguments. Tellingly, there are few if any references to these additional facts in her Response.

4916424

A. **Objections.**

Defendants object to PSOF: 132, 133, 134, 140, 141, 145, 149, 155, 156, 157, 158, 161, 162, 163, 164, 167, 173, 174, 176, 178, 179, 180, 181, 185, 186, 187, 188, 189, 190, 193, 195, 197, 199, 201, 202, 203, 204, 205, 206, 207, 209, 210, 211, 212, 213, 215, 222, 225, 228, 229, 231, 239, 240, 242, 243, 245, 246, 249, 251, 257, 260, 264, 266, 269, 270, 278 which should all be stricken and not considered because they impermissibly contain multiple statements within the same numbered paragraph and attempt to combine multiple unrelated facts into one. This is a blatant violation of Rule 56, which requires a "concise statement of material facts", *Martley v. City of Basehor, Kansas*, 2:19-cv-02138-HLT, 2022 WL 16714127 *1 – 2 (D. Kan. 2022).

Defendants object to PSOF: 131, 132, 143, 144, 157, 159, 162, 163, 164, 169, 170, 179, 181, 185, 186, 187, 188, 190, 191, 196, 199, 203, 205, 206, 207, 209, 211, 212, 213, 225, 226, 228, 229, 230, 237 and 263 which should all be stricken and not considered because they contain improper argument, commentary and legal conclusions which are not admissible evidence as required by Fed. R. Civ. P. 56. *Sprint Commc'ns Co. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1304 (D. Kan. 2007).

Defendants object to PSOF: 134, 135, 136, 141, 142, 144, 151, 154, 162, 163 and 164 because they are not properly supported with admissible evidence in violation of Rule 56 and rely on inadmissible hearsay or improper affidavits, specifically as stated *supra*, Exhibits 3, 8, 13, 16, 32 35 and 37 and should be stricken and not considered.

These objections are incorporated and in addition to the specific responses set forth below.

B. **Responses.**

For purposes of Defendants' Summary Judgment Motion, the following are not material facts and therefore are uncontroverted: 134, 135, 136, 137, 138, 139, 146, 149, 151, 152, 153, 154, 162, 165, 166, 167, 170, 171, 178, 180, 183, 184, 188, 195, 198, 210, 216, 218, 219, 221, 222, 223,

227, 231, 232, 234, 235, 236, 238, 239, 240, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 260, 263, 265, 266, 267, 268, 272, 274, 275, 276, 278.

132. Controverted. DSOF 6. This is not a material fact that would prevent summary judgment.

133. The first sentence is controverted, see DSOF 6. The second sentence is controverted, see DSOF 37, and the citation does not include Nicholson's complete response: she asked Plaintiff about the text message string between her and Courtney. (Pl Ex. 1, p. 139: 24-140:12).

138. Controverted. The cited testimony is that _Plaintiff_ told Ms. Hurtig she believed she was too intoxicated to have sex and it was possibly rape. This is not a material fact that would prevent summary judgment.

140. The first sentence is controverted as not supported by Plaintiff's citation. After Nicholson explained the three reporting options, Plaintiff said okay and that she'd think about it. (Pl Ex.1, p. 117:1-4). The second sentence is controverted, but immaterial.

141. Controverted. DSOF 24, 25.This is not a material fact that would prevent summary judgment.

142. The second sentence is not supported by the citation to Nicholson's Deposition, but this is not a material fact that would prevent summary judgment.

144. Controverted that Plaintiff "held onto her phone." DSOF 24, 25. This is not a material fact that would prevent summary judgment.

145. The first sentence is controverted because it is unsupported by the citation to the record. DSOF 24 and 25. The second sentence is controverted as incomplete, Pl Ex. 36 states Nicholson "advised Ms. Horocofsky we would download her phone and bring it back to her as soon as possible." This is not a material fact that would prevent summary judgment.

148. Controverted. Cottengim did not conduct an illegal warrantless search of Plaintiff's cell phone and this improper legal conclusion is not evidence. Cottengim responded to a hypothetical

question from plaintiff's counsel about whether downloading and 'rummaging around' a cellular phone should be done without consent to which Cottengim agreed it should not. (Pl Ex. 6: p. 198:3-199:13). This is not a material fact that would prevent summary judgment.

150. Controverted. Ford lacks qualifications as an expert under Rule 702. (Doc. 251 and 280), Ford's 'belief' is not admissible evidence at summary judgment. *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 119, 1200 (10th Cir. 2006). This is not a material fact that would prevent summary judgment.

155. Controverted. The citation supporting the first sentence discusses the procedure for handling SANE kits in 2020 (not 2018) (Pl Ex. 10, p. 109:14-111:1). The citation for the second sentence discusses Lawrence Memorial Hospital's policy (Not LPD) for handling SANE kits. The two sentences cannot be read together to create an issue of fact, nor is it a material fact that would prevent summary judgment.

156. Controverted. The first sentence is not supported and inaccurate, DSOF 34. The second sentence is controverted, DSOF 56, 70, 71. These are not material facts that would prevent summary judgment.

157. Controverted. DSOF 43, 70, 71, Stipulated Fact 32. Plaintiff testified that she was not interested in pursuing criminal charges *at that time*, *but may in the future pursue charges*. **(**Ex. C**.,** p. 156:9-17). This is not a material fact that would prevent summary judgment.

159. Controverted. The cited testimony does not support the argument that the case 'had turned into a false statement investigation' just that the report was false. DSOF 42, 44, 48.

160. and 168. Controverted. These facts are unsupported, but are not material facts that would prevent summary judgment.

161. The first sentence is controverted in part, DSOF 36. The second sentence is controverted as unsupported, Nicholson testified they had *not settled on* whether Plaintiff was making a false

report at that time. (Ex. G, p. 200:17-201:11). This is not a material fact that would prevent summary judgment.

173. Controverted, DSOF 43.

174. The first sentence is controverted as incomplete, Ex. H states, "She is thinking of going ahead and making a full statement ***and wanting to pursue charges with this case***," DSOF 43. The second sentence is controverted as taken out of context. The third sentence blatantly omits the entirety of Cottengim's answer. These are not material facts that would prevent summary judgment.

176. Controverted as unsupported, Cottengim was not investigating a 'false report' when he spoke with Mr. Thompson's two roommates. DSOF 44.

187. Controverted. Paragraph 20 of the Affidavit listed Thompson's text messages referencing Plaintiff as "so fucked up." (Ex. A). These are not material facts that would prevent summary judgment.

189. Controverted as unsupported arguments. These combined facts are not material facts that would prevent summary judgment.

190. Controverted. Plaintiff provided the names of Lindsie Ford and Amy Adams who could not 'corroborate her account' because they were not with her on September 27/28, 2018. DSOF 22 (Ex. B, p. 111:5-112:10). Plaintiff also provided the names of Mr. Thompson's roommates, Austin Jaspers and "Dan Cobb" ("Kopp") who were both interviewed. *Id*. DSOF 44, 60.

191. Controverted as unsupported, see response to PSOF 148. This is not a material fact that would prevent summary judgment.

192. Controverted. Paragraph 9 of the Affidavit contains this information. (Ex. A. CITY031092).

4916424

193. Controverted. The argument that "detectives could have sought testing of the anonymous rape kit at any time" because they had the serial number is not supported. Plaintiff did not authorize release of the SANE kit to law enforcement. DSOF 30.

194. Controverted. Paragraphs 6 and 24 of the Affidavit contain Plaintiff's account. (Ex. A)

196. Controverted. The Affidavit was not misleading or false. It is uncontroverted that Plaintiff returned a call from Nicholson, and that Plaintiff did contact Nicholson on October 3, 2018. DSOF 34 and 35. This is not a material fact that would prevent summary judgment.

197. Controverted. There was no false suggestion, Plaintiff's account of being blacked out is stated multiple times in the Affidavit. (Ex. A). This is not a material fact that would prevent summary judgment.

199. Controverted. Plaintiff's interpretation of Kansas Statutes is a legal conclusion and not admissible evidence.

200. Objection. The testimony are responses to conclusory questions from Plaintiff's counsel. These are not material facts that would prevent summary judgment.

201. Controverted. The cited testimony was in response to a hypothetical question from Plaintiff's counsel. This is not a material fact that would prevent summary judgment.

202. Uncontroverted, but immaterial because "alcohol blackout" is not a recognized science or used in police procedure. (See Doc. 252, 299, 300).

203. The first sentence is unsupported argument and controverted by paragraph 26 of the Affidavit (Ex. A)**;** based on the text messages both Plaintiff and Thompson were "coherent enough to type correctly spelled words *and form sentences, describing the events that had occurred or were occurring*." The second sentence is uncontroverted, but immaterial.

204. Controverted. DSOF 43.

205. Controverted. The Affidavit provided information learned though the investigation. (DSOF 77, 78). These are not material facts that prevent summary judgment.

206. Controverted. The conclusions in the Affidavit were based on the investigation. (DSOF 77, 78). This is not a material fact that would prevent summary judgment.

207. Objection. This is an improper attempt to combine multiple unrelated statements to arrive at an unsupported conclusion. This is not a material fact that would prevent summary judgment.

208. Controverted. DSOF 43, 77.

209. Controverted. DSOF 77, 78.

214. This paragraph is a glaring example of Plaintiff's failure to support 'facts' with citation to record evidence. Plaintiff states as "fact" that the Affidavit omitted exculpatory evidence that Plaintiff was legally incapable of consent due to alcohol intoxication when the only support is testimony from Sgt. Grady responding 'no' when asked if the Affidavit contains any information about Plaintiff's level of intoxication on the evening in question. There is no testimony that exculpatory evidence existed to show Plaintiff was legally incapable of consent due to alcohol intoxication. The second sentence is controverted Cottengim testified that there was no way he could accurately determine Plaintiff's level of intoxication due to the delay in reporting. The last sentence is also controverted as a misrepresentation of Detective Price's answers to hypothetical questions from Plaintiff's counsel; testifying that investigation of alcohol levels should be done the best that can be. "It is not always something that is available." (Pl Ex. 12, p. 54:8-9). This paragraph should be stricken and not considered.

215. Objection. Plaintiff's parenthetical reference to her retained expert's opinion is unsupported argument, is immaterial, lacks foundation and should not be considered. (Doc. 255).

220. The first sentence is controverted, the cited testimony is Grady's assumption when responding to a question about whether text messages indicated Thompson's intent to rape Plaintiff. The second and third sentences are uncontroverted, but immaterial.

222. Objection. The cited testimony is nothing more than Plaintiff's counsel reading select text messages, asking the witness what the texts mean and if the texts should have been investigated. This is not a material fact that would prevent summary judgment.

224. Objection. This is not a fact, it is a response to a hypothetical question from Plaintiff's counsel. Asking a question of a witness based on inaccurate information is not a fact properly supported pursuant to Rule 56. What Grady would have done in a hypothetical situation is irrelevant to Plaintiff's claims and does not prevent summary judgment.

226. Objection. This is not a fact, it is argument from counsel and unsupported by the record.

233. Objection. This is not a fact, it is a response to a hypothetical question from Plaintiff's counsel. Asking a question of a witness based on inaccurate information is not a fact properly supported pursuant to Rule 56.

237. Controverted. This fact is not supported by admissible evidence in violation of Rule 56 and SJG 12, 14 and 15 because the statements contained in Ms. Green's declaration are not based on personal knowledge and are conclusory speculation. (Doc. 284).

259. Controverted. The cited testimony does not support this fact, and it is not a material fact that would prevent summary judgment.

261. Controverted. Brixius testified that the practice only applied in the narrow circumstance of citizen complaints. (Doc. 315-20: 49:29-25). This is not a material fact that would prevent summary judgment.

262. Objection. This fact is not supported by admissible evidence in violation of Rule 56 and SJG 12, 14 and 15 because the statements contained in Ms. Evans' declaration are not based on

personal knowledge and are conclusory speculation. (See Doc. 282). Controverted. The fact is argument and not even supported by the inadmissible evidence.

264. Controverted. Unsupported by the record citation, but are not material facts that would prevent summary judgment.

269. Objection. These are nothing more than conclusory arguments that violate Rule 56 and SJG 14.

270. Controverted. Unsupported by the record citation, but are not material facts that would prevent summary judgment.

271, 272 and 273. Objection. These are not facts, but affirmative responses to conclusory statements from Plaintiff's counsel in violation of SJG 14.

277. Objection. This is not supported by admissible evidence (Docs. 250, 281 and 282), fails to comply with Rule 56 and SJG 12 and 14, and should be stricken and disregarded.

279. Objection. This is a conclusory argument based on inadmissible evidence, including opinions Plaintiff's expert is unqualified to render. (Docs. 252, 299 and 300). This fact violates Rule 56 and SJG 12 and should be stricken and disregarded.

## III. ARGUMENTS AND AUTHORITIES.

### A. **Defendants Cottengim and Nicholson are entitled to qualified immunity**.

#### 1.   **The Individual Defendants Did Not Violate Plaintiff's Equal Protection Rights**

Plaintiff devotes the majority of her brief attempting to re-litigate the criminal charges brought against her by the Douglas County District Attorney. Similar to her statement of claims in Exhibit 1 to the Pretrial Order, Plaintiff's response is replete with contradictory theories of her purported equal protection claim. First arguing that her rights to equal protection were violated because the Individual Defendants manufactured a false statement case against her from "nothing more than gender animus." (Doc. 315, p. 28). Next that the Individual Defendants violated her rights to equal

protection by treating her differently than her assailant and "displayed gender bias by protecting males accused of rape and not investigating allegations against them." *Id.* p. 31. Glaringly absent from her response is any disputed issue of material fact that the Individual Defendants treated similarly situated persons differently because of their gender, or that they acted with a discriminatory purpose during their investigation.

      a.   *The Individual Defendants were not motivated by a discriminatory purpose or by gender bias.*

    Aside from conclusory arguments, Plaintiff presents no facts that Cottengim and Nicholson were motivated by a discriminatory purpose or acted with gender bias during their investigation. Simply stating that the Individual Defendants' "acted with gender bias" does not make it so. Plaintiff falsely contends that the Individual Defendants acted with discriminatory purpose by "immediately targeting her as a false reporter when she said she was raped while severely intoxicated and unable to consent." (Doc. 315, p. 29). The uncontroverted facts demonstrate that Plaintiff was not "immediately targeted" as a false reporter. After Plaintiff confirmed she did not want the LPD to proceed with investigating her report of rape, the Individual Defendants did not do anything from October 3 – October 10, 2018. (DSOF 42).  Plaintiff initiated contact with LPD on October 10, 2018, which started the investigation into her rape report. (DSOF 43). Plaintiff again initiated contact with the LPD on October 26, 2018, to advise that she was proceeding with an IOA complaint through the University of Kansas and would give a complete statement to the LPD. (DSOF 70). Plaintiff voluntarily met with Cottengim and Officer Affalter on October 29, 2018, providing a lengthy interview regarding her sexual assault report, including providing a written timeline of events and a summary of her meeting with Mr. Thompson. (DSOF 71, 73). Plaintiff continued to contact and provide Individual Defendants with information, stating she may pursue charges after she graduated. (DSOF 56). The Individual Defendants' investigative actions

were in response to Plaintiff's on again, off again reporting, and do not support any discriminatory purpose.

Plaintiff claims that Defendants acted with gender bias in violation of her equal protection rights when they exceeded the scope of 'her limited consent' when downloading the contents of her cellular phone. (Doc. 314, p. 32). Not only is the allegation untrue (DSOF 23, 24 25), it is uncontroverted that downloads of the four cell phones during the investigation were completed using the exact same extraction method. (DSOF 76). Plaintiff's cellular phone was not processed differently than Mr. Thompson's or Mr. Guillot's showing gender did not play a role in the Individual Defendants' investigative actions.

Because there is no evidence that Cottengim and Nicholson acted with a discriminatory purpose based on gender, Plaintiff simply attributes "gender bias" to every action taken during the course of the investigation. Plaintiff argues the Individual Defendants failed to gather information about her level of intoxication on the night of the alleged rape, did not believe Plaintiff's theory of alcohol blackout and 'concocted false motives' to support Cottengim's view of Plaintiff's actions. (Doc. 315, p. 31). None of these conclusory arguments demonstrate a constitutional violation of Plaintiff's equal protection rights because they do not show that the decisions were made because of Plaintiff's gender.  Plaintiff agrees that Cottengim had never heard of alcohol blackout and did not consider it valid *in any situation*, not because of gender. Plaintiff's narrow focus on Nicholson's comments about the implications of a false report and the validity of Plaintiff's report do not amount to discrimination because a detective's "failure to take a crime victim seriously stemming simply from their disbelief in her accusations—even an officer's insinuation that she is lying or 'crying rape' – may not necessarily satisfy" requirements that there was discrimination *and* improper motive. *See, e.g., Snyder v. Smith*, 7 F. Supp. 3d 842, 863 (S.D. Ind. 2014).

4916424

Plaintiff offers no evidence that the Individual Defendants engaged in a pattern or practice of discrimination based on gender that would support an inference that Cottengim and Nicholson were motivated by a discriminatory purpose during the course of their investigation. Plaintiff's reference to Z.A. (Jane Doe #3 in Doc. 248) does not show a pattern of discrimination based on gender. Z.A.'s report of sexual assault occurred in 2019 to Officer Cervantez (DSOF 123); Cottengim had no involvement in the investigation (DSOF 124); and Nicholson's only involvement in the investigation was an initial call to set a time for an interview (DSOF 127). Detective David Garcia investigated Z.A.'s report and requested a warrant to arrest her assailant for rape. (DSOF 129, 130). Contrary to Plaintiff's representation, Z.A.'s report does not support a pattern of gender based discrimination from the Individual Defendants, and in no way supports the conclusory allegation that LPD officers 'fail to take sexual assault complaints seriously and fail to investigate sexual assault complaints due to gender bias.' (Doc. 315, p. 32).

Plaintiff has not met her burden to show that discriminatory intent based on gender was the motivating factor in the actions taken by the Individual Defendants, or that the Individual Defendants acted with a discriminatory purpose based on gender when conducting the investigation.

b.   *Plaintiff was not treated differently than similarly situated individuals.*

Plaintiff concedes that an equal protection violation occurs when the government treats someone differently from another who is ***similarly situated*** (Doc. 315, p. 31), yet, she fails to meet this threshold showing that she was treated differently than similarly situated individuals because of gender. "[T]he purpose of equal protection is to ensure that the government treats similarly situated people similarly or otherwise gives a sufficient reason for affording unequal treatment." *Arabalo v. City of Denver*, 625 Fed.Appx. 851, 868-869 (10th Cir. 2015) (finding plaintiff failed to articulate a constitutional deprivation for equal protection because she presented no evidence

that she was treated differently than other similarly situated individuals). "[T]o assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172-1173 (10th Cir. 2011) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)). Plaintiff is required to allege facts that she was treated differently from someone who is similarly situated and mere conclusory allegations are not sufficient to state a constitutional violation. *Id.* at 1173.

Blanketed allegations comparing the treatment of a victim and suspect are not sufficient to support a similarly situated person analysis. In *Fullman v. City of Philadelphia*, the police officers and District Attorney declined to investigate the plaintiff's complaint that a woman pointed a licensed firearm at him to threaten and intimidate him. No. 23-3073, 2024 WL 1637550, at *1 (3d Cir. 2024). The plaintiff alleged that had he not been black, had a criminal record and a history with the defendants, his complaint would have been investigated and prosecuted. *Id.* The Third Circuit affirmed judgment for the defendants, finding that plaintiff's conclusory allegations comparing himself only to his assailant, who was not alleged to have reported a crime, "failed to identify any similarly situated individuals who were treated differently". *Id.* at *2; *see, e.g., Shophar v. City of Olathe*, No. 15-CV-4961-DDC-KGS, 2017 WL 2618494, at *10 (D. Kan. 2017) (dismissing plaintiff's equal protection claim because he failed to show he was treated differently than other similarly-situated individuals and did not provide facts to support his conclusion that the police allowed women to make false abuse allegations without protecting men; mere disagreement with the government's handling of his complaint did not support an equal protection violation).

Plaintiff does not present any facts that she was treated differently than similarly situated individuals based on her gender or because of gender bias. Mr. Thompson, the alleged suspect, is

not a similarly situated individual. Similar to *Fullman*, Plaintiff has not alleged that Thompson engaged in the same action - reporting a sexual assault - and that the Individual Defendants treated that report differently because of his gender. Plaintiff's citation to *Solomon v. Parente* is unavailing. 2024 WL 2090148, *1 (W.D. Pa. 2024). There, the Court concluded that the plaintiff and defendant were similarly situated because they were ex-spouses subject to the same protection from abuse order. *Id.* at *7. "Both were parties in which one alleged violations by the other", were the subjects of the same investigation for violations of this same Order and could be compared "side-by-side." *Id.* Unlike *Solomon,* Plaintiff and Mr. Thompson were not subject to the same court order where each reported a violation by the other. They were not similarly situated because they were not alike in all relevant respects. *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

Allowing Plaintiff to argue that Thompson, the alleged suspect, was a similarly situated person and treated differently to support a constitutional violation, would undoubtedly open the floodgates for equal protection claims. If that were the case, a plaintiff could claim an equal protection violation on the sole basis that they believe the suspect in a reported crime was treated differently than they were; rather than providing evidence that similarly situated individuals were treated differently because of discriminatory motive. Plaintiff's further argument that Mr. Thompson and Mr. Guillot were treated differently because their account of events were 'believed' while Plaintiff's was not does not support violation of equal protection because neither were similarly situated individuals.

Not only does Plaintiff try to flip the analysis of equal protection into something that it is not, she also appears to be uncertain of her claim. At one point in the Response, stating that, "[s]he does not contend that '*men* accused of sexual assault are treated more favorably than women reporting a sexual assault,'" (Doc. 315, p. 31), and a few pages later, arguing: "Defendants

displayed gender bias by protecting males accused of rape and not investigating allegations against them." (Doc. 315, p. 33). Neither argument meets the requirement of showing someone similarly situated was treated differently because of their gender. Even if the Court could decipher Plaintiff's contradictory arguments, there is no evidence that the Individual Defendants protected males accused of rape and did not investigate allegations against them. Irrespective of Nicholson's contact with Z.A., it occurred *after* Plaintiff's report and investigation and a different detective was assigned to her case, completed the investigation and submitted a Probable Cause Affidavit requesting a warrant to arrest the male accused of rape. (DSOF 125, 129 and 130). Reference to Z.A. is not evidence that male suspects are treated differently than female reporters. No matter how Plaintiff tries to twist her claim, this is not evidence that similarly situated individuals were treated differently based on gender. A similarly situated group of persons would be men reporting sexual assault that were treated more favorably than women reporting sexual assault because of their gender, and there are simply no facts that support this inference.

Without evidence that she is similarly situated to members of a class receiving different treatment, Plaintiff cannot support a constitutional violation of her right to equal protection.

c.   *The Individual Defendants were not the final decisionmakers*.

Plaintiff's narrative about what she believes the Individual Defendants failed to do in their investigation and/or her conclusory statements about the Individual Defendants' discriminatory animus based on gender, do not resolve the dispositive issue of her claim for equal protection that the Individual Defendants were *not* the ultimate decisionmakers. Plaintiff acknowledges that charges did not stop at the conclusion of the Individual Defendants' investigation or when Cottengim provided the Probable Cause Affidavit to the DA. The DA made the decision to bring *two additional* charges against Plaintiff *after* the warrant was issued for her arrest and *after* the Individual Defendants had completed their investigation. Plaintiff's direction that the Court should

4916424

not rely on *Jennings* is misplaced. Both a class of one and class-based equal protection claim require "that the *decisionmaker* … selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' the law's differential treatment of a particular class of persons." *SECYS, LLC*, 666 F.3d at 685 (citation omitted). An equal protection challenge cannot be based on intermediate steps in a decisionmaking process, where the ultimate result was not discriminatory. *Jennings*, 383 F.3d at 1212 (10th Cir. 2004) (affirming summary judgment, because detective's actions were "but one link in the chain of events.").

The Individual Defendants were intermediaries, not the ultimate decisionmakers. It is uncontroverted that Nicholson did not author the Probable Cause Affidavit and Cottengim provided the Affidavit requesting a warrant to DA Cynthia Jo Rieg who *independently* reviewed the Affidavit *and* the entire investigative file to determine whether there was probable cause to charge Plaintiff with violating K.S.A. 21-5904(a)(1)(A). (DSOF 77, 80-81). Thereafter, DA, Evelyn Kemple, based on her review of the investigation *and through her own investigation* found there was probable cause to charge Plaintiff with two additional criminal violations. (DSOF 94). DA Kemple knew she was responsible for presenting evidence that would support criminal charges against Plaintiff and decided to add these charges not because of Cottengim's Affidavit, but based on the entire investigative file. (DSOF 96). Plaintiff's contention that the DA was defrauded by Cottengim (or Nicholson) or that they misled Kemple is nothing more than a conclusory unsupported argument, as is Plaintiff's allegation that the prosecutor in this case did not have all the material facts. Both of which are insufficient to support a constitutional violation in the context of a §1983 claim. *Robertson v. Las Animas Cnty. Sheriff's Dept.*, 500 F.3d 1185, 1193 (10th Cir.2007).

Plaintiff's argument that the prosecutor's decision cannot shield an officer for misrepresented facts is meritless, given that DA Kemple determined that additional charges should be brought

4916424

against Plaintiff, and affirmed the existence of probable cause through independent review of the entire investigative file. This is not a case where facts were intentionally concealed from the DA, and noticeably, Plaintiff never states what *exactly* was 'concealed.' Moreover, after hearing all of the evidence, the District Court affirmed the charges against Plaintiff, finding probable cause existed for all three felony charges and bound Plaintiff over for trial. (DSOF 99, 101, 102, 103). The Individual Defendants' actions were but one link in the chain of events. Plaintiff does not even muster an argument, that assuming the Individual Defendants' actions were discriminatory, the decisions made by the DA or District Judge would have been different.

The Individual Defendants did not violate Plaintiff's right to equal protection and absent a constitutional violation, qualified immunity applies and summary judgment is warranted.

## 2.  The Individual Defendants did not violate a right that was clearly established.

"Qualified 'immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wood v. Welch*, No. 22-2279-DDC, 2024 WL 2880405, *6 (D. Kan. 2024) (citations omitted). "A Government official's conduct violates clearly established law when, <u>at the time of the challenged conduct</u>, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft*, 563 U.S. at 741 (citation omitted) (emphasis added). "[N]early every right – if viewed at a sufficiently high level of generality – is clearly established." *Wood* 2024 WL 2880405 at *7 (citations omitted).  To determine whether the right was clearly established, the court must engage in a 'narrowly tailored and context-specific exercise.' *Id.* (citations omitted). "The 'precise contours of the right must have been so clear that every reasonable official in that circumstance would have understood that what he or she was doing violated that right, leaving no debate as to the lawfulness of the conduct.'" *Id.* (citations omitted). To place the constitutional question beyond debate, the law must be "black and white." *Id.* at *9.

Plaintiff argues that it was clearly established that discrimination based on gender violates the right to equal protection and that police protection services are to be provided in a non-discriminatory manner. These are the high-level generalities courts have rejected when determining whether a right is clearly established so that a governmental official is deprived of the protection of qualified immunity. As recognized in *Schaefer v. Unified Government of Athens-Clarke County, Ga.*, the general principle against discrimination based on gender stereotyping does "not put [ ] officers on notice that their acts or omissions [ ] constituted gender discrimination." No. 3:14-CV-80 (CAR), 2015 WL 3465932, at *7 (M.D. Ga. 2015). A statement of the Equal Protection Clause alone is not sufficient to place defendants on notice that their actions or omissions are unconstitutional. *Id.*

Plaintiff's reliance on a recent decision from the District of Oregon is erroneous. Not only was *Doe v. Wright* decided well after the actions of the Individual Defendants at issue in this suit, it is not a decision from the Supreme Court or the Tenth Circuit and is factually distinguishable. In *Doe,* the Court held that failing to investigate a reported crime because of gender was a clearly established right because "a police officer may not _deny_ any protective services to anyone based on any discriminatory motive—including gender." 2023 WL 6810734, at *9 (D. Or. 2023). Plaintiff was not denied police protective services based on her gender, nor did the Individual Officers refuse to investigate her report of sexual assault because of her gender. To the contrary, it is uncontroverted that Defendants' took action because *Plaintiff* reported a crime to the LPD. The Individual Defendants met with Plaintiff the night of her report and downloaded both Plaintiff and Ms. Hurtig's cellphones as evidence to assist in the investigation of Plaintiff's sexual assault report. Even though Plaintiff reported the incident and completed a SANE exam, *Plaintiff* declined to release the information for use in the criminal investigation. Plaintiff told Nicholson that she did not want the LPD to conduct further investigation and Detectives stopped work until *Plaintiff*

4916424

contacted the LPD to restart the investigation. Once Plaintiff contacted the LPD, Cottengim investigated her reported sexual assault by interviewing Thompson's roommates, Mr. Thompson, Mr. Guillot, Mr. Stokes, Ms. Collins and contacted Ms. Clark. He also downloaded both Mr. Thompson and Mr. Guillot's cellphones to assist in the investigation. After Plaintiff again contacted the LPD about the reported sexual assault, Cottengim completed an interview with her.

These are not the actions of an officer who denied police services or refused to investigate a reported crime because of the gender of the reporting party. Plaintiff's real contention is that the Individual Defendants did not perform a proper investigation of her reported rape, or that they should have conducted their investigation differently - that they should have used a trauma informed approach, should have investigated her level of intoxication despite her delayed reporting, or researched and considered her unsupported theory of 'alcohol blackout' during the investigation. None of these allegations support finding the Individual Defendants violated a clearly established constitutional right. As the Tenth Circuit found in *Jennings*, the failure to vigorously investigate a charge of rape was not a clearly established right. 383 F.3d at 1212. The accusation that an officer could have done something better or differently during an investigation does not equate to finding a violation of a clearly established right. *See, e.g., Maw*, 2023 WL 4463015, at \*5. Plaintiff does not cite to precedent existing at the time that placed the constitutional question beyond debate to demonstrate a clearly established right that would prevent the Individual Defendants from the protection of qualified immunity.

Plaintiff fails to establish that Nicholson and Cottengim violated her rights to Equal Protection under 42 U.S.C. § 1983 *and* that her rights were so clearly established that a reasonable detective in this situation would have known that their actions were improper. This failure entitles the Individual Defendants to the protection of qualified immunity and entry of summary judgment.

B.  **Plaintiff Cannot Support a claim against the City for malicious prosecution.**

Plaintiff concedes that the City can only be liable for the tortious conduct of its employees, yet argues that the Court should ignore its prior decision expressly dismissing malicious prosecution and abuse of process claims against the Individual Defendants under §1983. This Court subsequently held that, "the state law claims of abuse of process and malicious prosecution are substantively identical to the §1983 which the Court expressly dismissed in its prior Order." (Doc. 104, p. 7). Plaintiff states that the malicious prosecution claim against the City 'encompasses the acts and omissions of other employees,' but then only discusses the actions of the Individual Defendants which the Court has already dismissed as a matter of law. (Doc. 58, 104).

1.  **The City did not initiate a claim against Plaintiff**

Plaintiff does not challenge this Court's prior holding that, "[t]he chain of causation is broken by a preliminary hearing 'in which a judge independently listened to testimony, evaluated the credibility of those testifying, reviewed evidence, and concluded that the evidence was sufficient to bind [a defendant] over for trial.'" (Doc. 58, p. 54). Even if the original affidavit lacks probable cause, the preliminary hearing may break the chain of causation. *Id.* (citing *Taylor*, 82 F.3d at 1563-64, n. 9). As detailed below, there is nothing in the record before the Court that the facts from the Affidavit caused false or perjured testimony at the preliminary hearing. Regardless of whether the Affidavit set any action in motion, the preliminary hearing broke any chain of causation, negating the first element required to support a claim for malicious prosecution.

2.  **Probable Cause Existed.**

Plaintiff argues that there was no probable cause because 'the facts viewed in the light most favorable to her show that she was raped and incapable of consent due to intoxication.' (Doc. 315, p. 44).  Except that is not the relevant inquiry – the relevant inquiry is whether there was probable cause to charge Plaintiff with violation of K.S.A. 21-5904(a)(1)(A), to which two prosecuting

4916424

attorneys and a District Court Judge resoundingly found existed. In cases for malicious prosecution, the inquiry as to want of probable cause is limited to the facts and circumstances as they appeared to defendant at the time the prosecution was commenced. *Porubsky v. Long*, 487 P.3d 768 (Kan. Ct. App. 2021).

Plaintiff contends that information of her intoxication, ability to consent, SANE exam results, Mr. Thompson's text messages, witness confirmation of her intoxication and her initial decision not to press criminal charges should have been included in Cottengim's Affidavit and if included establish a lack of probable cause. (Doc. 315, p. 46). "Where information has been omitted from an affidavit, [the Court] determine[s] the existence of probable cause 'by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.'" *Taylor*, 82 F.3d at 1562. Inclusion of Plaintiff's requested information in the Affidavit would not change the existence of probable cause because the same *was* considered by DA Kemple in her independent review of the investigative file when charging Plaintiff with two *additional* felonies, and all of the information was presented at the preliminary hearing. The Court heard testimony from twelve witnesses, including Plaintiff; considered Plaintiff's medical records from LMH and her SANE report; her level of intoxication through surveillance from The Sandbar and her bank statements; and text messages from Plaintiff, Ms. Hurtig, Mr. Thompson, Mr. Stokes and Mr. Guillot; and testimony that Plaintiff did not want to press charges. (DSOF 9, 102). After considering all the evidence and arguments, the District Court found that probable cause existed for the three-count complaint against Plaintiff for intentional interference with law enforcement. (DSOF 103).

The Court gives "a judge's probable-cause finding 'great deference.'" *Moses-El v. City and County of Denver*, No. 20-1102, 2022 WL 1741944, at *14 (10th Cir. 2022) (stating plaintiff "seemingly wants us to reassess probable cause based only on *his* identification and evaluation of

the evidence") (internal citations omitted); *Thompson*, 205 Kan. at 95 (finding probable cause at a preliminary hearing is prima facie evidence that it existed in a subsequent action of malicious prosecution). The District Court's decision is prima facie evidence that probable cause existed and the claimed omissions from the Affidavit do not change this finding.

Plaintiff takes the opportunity in her Response to provide completely unsubstantiated arguments that do not create a genuine issue of material fact that would preclude summary judgment, such as having no memory of sending a text message to Ms. Hurtig at 2:44 a.m. and contending that maybe her assailant sent the message (Doc. 315, p. 44). Not only is there is no evidence that Plaintiff's 'assailant' sent messages from her cellphone at 2:44 a.m., it is wholly irrelevant to the existence of probable cause to support charges of interference with law enforcement. Ironically, Plaintiff does not discuss the subsequent text messages about her evening with Mr. Thompson admittedly sent around 6:10 a.m. that: she "literally made him stop having sex and was like oh no what will Kriston say" (DSOF 7); or that she told Ms. Hurting that Mr. Thompson was really good at sex (DSOF 8). Nor is there evidence to support Plaintiff's argument that she '*never*' intended to pursue a police investigation. This statement simply is untrue when Plaintiff (1) reported that Mr. Thompson sexually assaulted her and met LPD officers at LMH on September 29, 2018; (2) called LPD on October 10, 2018 to request that it proceed with investigating her reported rape; (3) called LPD on October 26, 2018, to advise that she filed a formal IOA Complaint and agreed to provide a complete statement about the rape; and (4) voluntarily met with LPD officers on October 29, 2018, providing a lengthy interview, a written timeline of events and a written summary of her meeting with Mr. Thompson. These are not actions of an individual that never intended the police to pursue an investigation and do not affect the District Court's finding of probable cause to substantiate a claim for malicious prosecution.

*Tran v. City of Lawrence, Kansas* is not informative because the court found that an issue of material fact existed about whether there was probable cause to arrest the plaintiff because plaintiff pinpointed a crucial differentiating fact that he alleged to be false. 653 F. Sup. 3d 894, 907-908 (D. Kan. 2023). Plaintiff does not set out any material facts that challenge Judge Martin's finding that probable cause existed for her arrest and criminal charges. (DSOF 103). Plaintiff does not cite any particular facts in the Affidavit that were false or inaccurate, and does not offer any facts that the Individual Defendants (or any other City employee) gave false or perjured testimony during the preliminary hearing. Plaintiff's general proposition that she did not commit the crime of interfering with a law enforcement officer does not speak to the issue of whether probable cause existed for her arrest. *See, e.g., Taylor v. Szewc*, No. 24-3009-JWL, 2024 WL 1885510, at *1 (D. Kan. 2024).

This case is not analogous to *Bowling v. United States* where the defendants could not rely on determinations of probable cause from a judicial officer and preliminary hearing because false assertions in an affidavit were the *only* evidence presented and the testimony was based *solely* on false statements of the defendant. No. 04-2320-JAR, 2009 WL 723226, at *8 (D. Kan. 2009). It is uncontroverted that both charging DA Rieg and prosecuting DA Kemple were provided with the LPD's entire investigative file and made independent decisions that probable cause existed to charge Plaintiff with a crime. (DSOF 81, 82, 83, 90, 94). Apart from conclusory allegations that Cottengim and Nicholson provided selective facts from their investigation for the probable cause affidavit and their investigation, "tainted by gender bias" was the basis for the affidavit and the source of information provided to the prosecutor, Plaintiff fails to ever articulate what information in the Affidavit was *false* and presents no evidence that the Individual Defendants provided *knowingly false* information.

Neither DA found any of the information presented or reports prepared by either Nicholson or Cottengim during their investigation contained false information. (DSOF, 87, 88, 92, 93). It is uncontroverted that all of the facts and investigatory information were fully and truthfully given to the prosecutor which defeats Plaintiff's claim for malicious prosecution. *Howell*, 2011 WL 4900038, *8.

### 3. There is no evidence of malice.

Plaintiff's definition of malice is taken out of context in an attempt to diminish the requirement for finding existence of the same. Plaintiff's representation that *Sanchez v. Hartley* provides that malice is found when officers "knowingly or recklessly use[] false information to institute legal process" is inaccurate. 810 F.3d 750, 754 (10th Cir. 2016). The sentence pertained to whether there was a constitutional violation of the Fourth Amendment and reads, "The defendants do not dispute that in the abstract, the Constitution is violated when an officer knowingly or recklessly uses false information to institute legal process." *Id.* This excerpt not only fails to define malice, it pertains to a *federal* requisite for malicious prosecution, which this Court has already dismissed.

Later in her Response, Plaintiff correctly states that malice is only present where an action is "initiated primarily for a purpose other than that of securing proper adjudication of the claim on which the action is based." *Bartal*, 268 Kan. at 200 (internal citation omitted); (Doc. 315, p. 47). This includes "evil-mindedness or specific intent to injure" or "as a state of mind characterized by an intent to do a harmful act without a reasonable justification or excuse." *Burney*, 23 Kan. App. 2d at 404-405 (internal citation omitted). In *Allen v. Linn County, Kansas, Board of Commissioners*, the Court dismissed plaintiff's 1983 claim for malicious prosecution finding that even though the conclusions from the officer's investigation was proven wrong, "that did not mean that those conclusions were <u>knowingly</u> false when made." 2004 WL 3066168 at *10-11 (D. Kan. 2024) (emphasis in original).

4916424

Here, not only were the investigative conclusions correct, as indicated by the DA and District Court's findings of probable cause, there is no evidence that the investigative conclusions were *knowingly* false when made or that the Individual Defendants *knowingly fabricated* facts. It is uncontroverted that Cottengim's Affidavit was based on information from his investigation (DSOF 77, 78) and the conclusions in the Affidavit were based on his *sincerely held belief* that Plaintiff violated the law. *Id.* (Doc. 50, p. 58). Beyond unsupported conclusions that the investigation was motivated by gender animus, Plaintiff's Response is devoid of any actual facts or record evidence to support the existence of malice. Plaintiff's repetitive allegations that the detectives did not adequately investigate her report of rape, or the wholly unsupported statement that no reasonable officer would have executed a probable cause affidavit for false report without first determining that the rape did not occur do not support finding malice. "The fact that [officers] might not have conducted a perfect investigation cannot be equated with 'evil-mindedness or specific intent to injure.'" *Burney*, 23 Kan. App. 2d at 404. "Prosecuting Plaintiff for statements believed to be false was not acting for an improper purpose." (Doc. 58, p. 58).

There are no genuine issues of material fact that the City initiated, continued or procured a criminal complaint against Plaintiff that was not supported by probable cause or done with malice, and summary judgment is warranted.

### C. Plaintiff Cannot Support a claim against the City for abuse of process.

Plaintiff's abuse of process claim relies solely on actions of Individual Defendants and their supervisors *before* the initiation of any process. Plaintiff argues that the City caused an investigation of her for an improper purpose and in doing so failed to consider – in plaintiff's opinion – generally accepted standards for investigating a report of sexual assault and failed to follow certain LPD policies. The District of Kansas recently considered this exact challenge in *Eravi v. City of Lawrence, Kansas*, dismissing claim for abuse of process because it was based on

the initiation of process, not on the misuse of legal process after it was issued. No. 04-2320-JAR, 2024 WL 3360447, at *4 (D. Kan. 2024). *See also*, *Jackson*, 2005 WL 756773, at *6 ("[t]he mere initiation of proceedings with or without justification does not constitute abuse of process" because "abuse of process refers to the improper use of process after it has issued").

Because Plaintiff's claim is solely based on the *initiation* of process, rather than misuse of the process itself, summary judgment in favor of the City is warranted.

### D.   Plaintiff Fails to Support a Claim for Intentional Infliction of Emotional Distress.

#### 1.   Defendants' conduct was not extreme or outrageous.

Plaintiff's Response contends that instigating her arrest under a "false ruse" and charging her with the crime of false reporting amounts to outrageous conduct. However, "[w]here police officers 'merely carr[y] out their obligations as law enforcement officials[,]' their 'conduct 'as a matter of law cannot be deemed extreme and outrageous.'" *Aaron v. City of Lowell*, 666 F. Supp. 3d 102, 120 (D. Mass. 2023) (internal citations omitted); *see also Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 319 (D. Mass. 1997) ("[T]he mere fact that the defendants' conduct may turn out to be violative of the plaintiff['s] civil rights does not … necessitate a finding that the conduct is sufficiently egregious to state a claim for [IIED].") (citations omitted); *Clark v. Township of Falls*, 890 F.2d 611, 624 (3d Cir. 1989) (the defendants actions consisting "of forwarding charges to the district attorney, confirming that [plaintiff] was being investigated, showing disparaging reports in public, changing his duties and depriving him of privileges, and, possibly, limiting his speech at Board meetings" were not extreme and outrageous conduct). The initiation of an investigation, seeking the advice of a county prosecutor or subjecting a suspect to a booking procedure as contemplated by a warrant are not actions that reflect extreme and outrageous behavior. *Gidley v. Oliveri*, 641 F. Supp. 2d 92, 107 (D. N.H. 2009) (citations omitted). Likewise, actions to investigate a false report are not in and of themselves extreme or outrageous. *See, e.g., Brewton v.*

4916424

*City of New York*, 550 F. Supp. 2d 355, 269 (E.D.N.Y. 2008) (finding defendants' conduct investigating and arresting plaintiff for filing a false domestic report not to be extreme and outrageous).

Plaintiff's reliance on *Chase v. Nodine's Smokehouse, Inc.* is misplaced. There, the District of Connecticut denied summary judgment because the plaintiff set out facts that the officers willfully or recklessly ignored her attempts to clarify her statement of her sexual assault; knowingly misrepresented facts surrounding her statement to the judge and district attorney to obtain a warrant for her arrest; and arrested her for leaving a detail out of her account of her sexual assault. 2020 WL 8181655, at *21. The Court held that a jury could find the officers' actions as outrageous for intentional infliction of emotional distress when they *knowingly* and *falsely* charged her with a false report. *Id.* Dissimilarly, there is no evidence before the Court that the Individual Defendants willfully or recklessly ignored Plaintiff's report, or that Individual Defendants knowingly and falsely charged Plaintiff with a crime. The record reflects the opposite. That is, following *Plaintiff's* report that she had been the victim of a crime, Individual Defendants met with Plaintiff at LMH to initiate an investigation. In order to confirm Plaintiff did not want further investigation and that no one was coercing Plaintiff from pursing the same, Detective Nicolson met with Plaintiff in-person. (DSOF 36). There is no evidence that her 'motive' was to obtain a confession from Plaintiff. The LPD began investigation of Plaintiff's report of rape after <u>she</u> contacted LPD about moving forward with charges (DSOF 43), and then took a formal statement of the events after she again contacted the LPD on October 26th (DSOF 70-73). Cottengim's Affidavit summarized the information from months of investigation and stated his sincerely held belief that based on months of investigation, probable cause existed that Plaintiff committed the crime of interference with law enforcement. The act of investigating the crime of interference with law enforcement does not qualify as extreme and outrageous conduct. To hold otherwise would eviscerate any ability to deter

criminal activity and would impermissibly expand the threshold of what is considered extreme and outrageous behavior to support a claim for intentional infliction of emotional distress.

Plaintiff admits that law enforcement's use of a ruse is not prohibited unless the conduct was unconstitutional, yet fails to set forth any evidence that Defendants engaged in unconstitutional conduct.  Instead, she describes the premise of the ruse itself for which "there is no constitutional guarantee that a person will not be subject to a sting operation or be lured to a public place for the purpose of arrest."  *Jenkins v. City of New York*, No. 91 Civ. 3639  (RLC), 1992 WL 147647, at *8 (S.D.N.Y. 1992) (finding that individual does not have to be informed that he is suspected of a crime when asked to come to the police station) (citing *see United States v. Leung*, 929 F.2d 1204, 1208 (7th Cir. 1991) ("ruse used to gain entry to hotel room did not offend Constitution"); *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982) ("fact that government agents 'enticed' defendant to place of his arrest not a constitutional violation"); *People v. Hill*, 138 A.D.2d 629, 526 N.Y.S.2d 213, 214 (2d Dep't 1988) ("police officer's ruse of asking suspect to be a 'filler' in line-up did not violate due process")). Use of a ruse in effectuating Plaintiff's arrest is not unconstitutional, nor is it extreme and outrageous conduct that supports a claim for intentional infliction of emotional distress. Plaintiff's other examples also fail to support a finding of extreme and outrageous conduct. Alleged lack of oversight during the investigation does not rise to the level of extreme and outrageous conduct required to support a claim for outrage, nor does the unsubstantiated claim that supervisors were 'high-fiving' each other about a false reporting case sometime *after* Plaintiff's arrest.

**2.   There is no causal connection and the alleged distress was not severely debilitating.**

Plaintiff ignores the requisite of a causal link between her alleged distress and Defendants conduct, simply listing a myriad of diagnoses and symptoms. (contrary to Plaintiff's footnote 11, the full citation to *Valadez* was provided, (Doc. 248, p. 38)). Notably Plaintiff does not dispute

that Dr. Saripalli diagnosed Plaintiff with PTSD *prior* to Plaintiff's arrest for false reporting based on the alleged sexual assault (DSOF 109), *not* because of the Individual Defendants' conduct. (DSOF 110). A list of diagnoses and alleged symptoms without any causal connection to Defendants' conduct is not enough to support a claim for intentional infliction of emotional distress. *See, e.g., Dana v. Heartland Management Co., Inc.*, 48 Kan. App. 2d 1048, 1060 (Kan. Ct. App. 2013) (finding that plaintiffs failed to prove extreme or severe emotional distress when the record did not explicitly show that plaintiffs sought medical treatment or psychological counseling specifically related to the defendants' conduct.).

Plaintiff also fails to show that her condition or symptoms were long lasting and debilitating. Plaintiff alleges that her distress lasted until 2020. However, it is undisputed that she did not seek any treatment for any condition after she left the University of Kansas. (DSOF 111). Since that time, she passed the bar examination and is employed as an attorney at a national law firm, where she is on track to become a named shareholder in 2029. Plaintiff did not sustained long lasting debilitating conditions that would support a claim for intentional infliction of emotional distress.

Plaintiff fails to establish that Defendants' conduct was extreme or outrageous, that the conduct was the cause of the alleged distress or that the alleged distress was severely debilitating and summary judgment is warranted.

**E. The City is Entitled to Summary Judgment on Plaintiff's claim for Vicarious Liability.**

Vicarious liability is a theory rather than a separate cause of action. Plaintiff fails to provide any support that an independent cause of action for "vicarious liability" exists against the City and entry of summary judgment is warranted.

**F.  Discretionary Function Immunity Precludes Plaintiff's State Tort Claims.**

Plaintiff does not deny that investigatory methods and procedures require the exercise of judgment and discretion, and a police officer's determination of probable cause based on their

4916424

investigation are discretionary functions. *Schreiner*, 315 Kan. at 38 (citation omitted); *Beattie*, 543 Fed. Appx., at 860 (unpublished). Plaintiff agrees that the Kansas Supreme Court has made clear that discretionary function immunity protects all but those that are plainly incompetent. Plaintiff's sole argument is that Defendants engaged in wanton conduct, which is not protected under discretionary function immunity.

Kansas precedent has already rejected such an argument. Plaintiff's hyper-focus on the probable cause Affidavit purportedly providing inadequate or evasive information is exactly the conduct that discretionary function immunity protects. In *Schreiner,* the Kansas Supreme Court held that even when officers were mistaken and lacked reasonable suspicion, they were still entitled to discretionary function immunity. 315 Kan. at 44-45. It is not whether the officers correctly determined probable cause existed; the relevant inquiry is whether the action was discretionary. *Id.* at 45. The Supreme Court reasoned that officers must be afforded discretion to determine the existence of probable cause based on their experience or training and their actions should not be deterred based on a fear for potential liability. *Id.* The Individual Defendants' investigative choices and Cottengim's preparation of the probable cause Affidavit were discretionary and are afforded immunity.

Neither of the Individual Defendants engaged in wanton conduct and their investigative actions were not done with reckless disregard or complete indifference to the consequences. As detailed *supra,* Nicholson's investigative actions do not rise to the level of wanton conduct. This Court has already found that the conclusions in Cottengim's Affidavit were based on information from the investigation and on his *sincerely held belief* that Plaintiff violated the law which cannot be considered wanton conduct. (Doc. 58, p. 56-58). The Individual Defendants' decisions and actions while conducting their investigation were discretionary and of the nature and quality that the

legislature intended to put beyond judicial review and Defendants are entitled to immunity from Plaintiff's tort claims.

### G. Plaintiff Fails to Support a Claim for Punitive Damages.

The Individual Defendants' actions were based on *Plaintiff*'s on-and-off again reporting to LPD and were not undertaken with an evil intention or malice. Without malicious intent, Plaintiff cannot support a claim for punitive damages as a matter of law and judgment is warranted.

## IV. CONCLUSION

There is no genuine dispute as to any material fact that would prevent granting Defendants' Motion for Summary Judgment. Plaintiff's claims fail as a matter of law and Defendants' respectfully request the Court enter an Order granting summary judgment and dismissing Plaintiff's First Amended Complaint with prejudice, and issue such other and further relief this Court deems just and proper.

Respectfully submitted,

HINKLE LAW FIRM LLC
8711 Penrose Lane, Suite 400
Lenexa, Kansas 66219-8197
913-345-9205/ FAX: 913-345-4832

By: __/s/ Michelle R. Stewart_____
Michelle R. Stewart, mstewart@hinklaw.com #19260
Lindsey R. Freihoff, lfreihoff@hinklaw.com     #28560

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12 day of  August, 2024, the foregoing *Defendants' Reply in Support of Motion for Summary Judgment* was filed electronically with the Clerk of the US District Court for District of Kansas; and a service copy was served via ECF electronic notification on the following:

Cheryl A. Pilate, (cpilate@morganpilate.com) and Sarah Brown, (sarah@brownandcurry.com)
*Attorneys for Plaintiff*

_____/s/Michelle R. Stewart_____
ATTORNEYS FOR DEFENDANTS

4916424